# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued November 1, 2012          Decided January 25, 2013

No. 10-3091

UNITED STATES OF AMERICA,
APPELLEE

v.

DAVID A. DUVALL, ALSO KNOWN AS TONE,
APPELLANT

Consolidated with 11-3114

Appeals from the United States District Court
for the District of Columbia
(No. 1:09-cr-00236-RCL-1)

*Sylvia Royce*, appointed by the court, argued the cause and filed the briefs for appellant.

*Stratton C. Strand*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Ronald C. Machen Jr.*, U.S. Attorney, and *Elizabeth Trosman*, *Chrisellen R. Kolb*, and *Courtney Spivey*, Assistant U.S. Attorneys.

Before: GARLAND and KAVANAUGH, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* KAVANAUGH.

Opinion concurring in the judgment filed by *Senior Circuit Judge* WILLIAMS.

KAVANAUGH, *Circuit Judge*: From 2007 to 2009, David Duvall and others distributed large quantities of powder cocaine to mid-level drug dealers, who then cooked the cocaine into crack and sold it. In late 2009, Duvall was arrested and indicted for conspiracy to distribute crack cocaine.

Duvall pled guilty pursuant to a Rule 11(c)(1)(C) plea agreement. A Rule 11(c)(1)(C) plea agreement generally specifies an agreed-upon sentence or sentencing range. Here, the District Court accepted the plea agreement and sentenced Duvall to 14 years' imprisonment, as the agreement required.

On appeal, Duvall primarily argues that he is entitled to a sentence reduction because the advisory U.S. Sentencing Guidelines governing crack-related offenses were retroactively lowered after he was sentenced. Federal law allows sentence reductions when a defendant "has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission." 18 U.S.C. § 3582(c)(2). Here, however, Duvall's sentence was not based on a Guidelines sentencing range, but was instead based on a plea agreement made under Federal Rule of Criminal Procedure 11(c)(1)(C) – that is, the plea agreement that provided for his 14-year sentence. *See Freeman v. United States*, 131 S. Ct. 2685, 2695-700 (2011) (opinion of Sotomayor, J.). In this case, therefore, the

Sentencing Commission's change to the crack Guidelines sentencing ranges does not make Duvall eligible for a sentence reduction under Section 3582(c)(2).

Duvall also raises a choice-of-counsel argument, which we find meritless.

We therefore affirm the judgment of the District Court.

I

From at least August 2007 until his arrest in September 2009, David Duvall and his associates supplied large quantities of powder cocaine to mid-level street dealers in the Washington, D.C., area. The dealers then cooked the cocaine into crack and sold it.

After Duvall was arrested and indicted, the Government notified the District Court that Duvall's record contained two prior drug convictions. As a result, Duvall would face a mandatory life sentence if found guilty at trial.

Duvall hired two attorneys to represent him. His attorneys negotiated with the Government, and the parties ultimately reached a plea agreement that avoided a possible life sentence. The agreement expressly listed an agreed-upon sentence of 15 years' imprisonment for conspiracy to distribute crack cocaine – far lower than the mandatory life sentence that Duvall would have received had he been convicted at trial. The plea agreement was negotiated pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), which allows plea agreements conditioned on a specific sentence or sentencing range. If the district court accepts a Rule 11(c)(1)(C) plea agreement, the court must impose the sentence listed in the plea agreement. If the district court does not accept the plea agreement (for example, because of the

court's concerns about the agreed-upon sentence), the defendant is free to withdraw his plea.

The District Court accepted Duvall's guilty plea on April 21, 2010. When Duvall entered his plea, the Court asked if he was "satisfied with the services" of his attorneys. Plea Entry Tr. 24, Apr. 21, 2010. Duvall answered "no," but he said that he still wanted to proceed with the plea. *Id.* at 24, 30.

After the plea hearing but before sentencing, the District Court received a letter from Duvall raising concerns about the effectiveness of his counsel. Duvall wrote that his "Sixth Amendment Right" to "effective assistance of [counsel] in criminal prosecution" was being violated because, among other things, he was promised discovery and a private investigator, but received none, and one of his attorneys was on the verge of being disbarred. Duvall App. 30.

To address Duvall's concerns, the District Court quickly convened a status conference that took place on May 3, 2010. At the conference, Duvall reiterated his grievances and noted that, due to his mistrust of counsel, he didn't "fully understand" if he was "facing life or not." Status Conference Tr. 4, May 3, 2010. He wanted to plead guilty *only* if a conviction would truly trigger a mandatory life sentence. And he wasn't sure he was truly facing a mandatory life sentence if convicted at trial.

The Court asked if Duvall had "any money left to hire another lawyer." *Id.* at 6. Duvall replied that he did not. Duvall's attorneys withdrew, and the Court then appointed a new attorney to assist Duvall and to help Duvall determine whether he should withdraw his plea.

The new counsel advised Duvall that he was, in fact, facing a mandatory life sentence if convicted at trial. The

new counsel also convinced the Government to reduce Duvall's agreed-upon sentence from 15 years to 14 years.

At sentencing on September 10, 2010, after being invited to speak, Duvall expressed no objections to the plea agreement or to his new counsel. The District Court then sentenced Duvall to 14 years' imprisonment.

About a year later, effective November 1, 2011, the U.S. Sentencing Commission permanently reduced the sentencing levels for certain crack-related offenses. *See* U.S. SENTENCING GUIDELINES MANUAL app. C, amend. 750 (2011). In addition, the Commission made those reductions retroactive. *Id.* amend. 759.

Based on those new Guidelines, Duvall filed a motion to reduce his sentence. The District Court denied the motion. The Court found that Duvall's sentence was based on the Rule 11(c)(1)(C) plea agreement, not on the now-reduced Guidelines sentencing range, as is required for a sentence reduction under 18 U.S.C. § 3582(c)(2).

II

On appeal, Duvall contends that the District Court did not give him sufficient time to hire a new attorney of his choice, using his own means, between the May 2010 status conference – when Duvall jettisoned his original attorneys – and the September 2010 sentencing. Because he did not raise this argument in the District Court, we review it only for plain error. The argument is meritless in light of (i) the four-month stretch between counsel's withdrawal and sentencing – a period in which Duvall could have hired a different attorney if he had the desire and means to do so; and (ii) the District Court's patient and careful handling of Duvall's stated concerns with his initial attorneys, including the Court's

assignment of new counsel who assisted Duvall. Put simply, the District Court did not in any way prevent Duvall from hiring his counsel of choice. There was no error, much less plain error.

III

Duvall next argues that he is entitled to a sentence reduction because of the Sentencing Commission's recent revision to the crack-cocaine Guidelines.

Federal law allows a defendant to receive a sentence reduction when he "has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission." 18 U.S.C. § 3582(c)(2). About a year after Duvall was sentenced for conspiracy to distribute crack cocaine, the U.S. Sentencing Commission amended the advisory Sentencing Guidelines governing crack-related offenses and gave those amendments retroactive effect. *See* U.S. SENTENCING GUIDELINES MANUAL app. C, amend. 750 (2011) (effective Nov. 1, 2011) (adjusting Guidelines); *id.*, amend. 759 (effective Nov. 1, 2011) (making Amendment 750 retroactive).

Under the statute, Duvall is eligible for a sentence reduction if his sentence was "based on" a Guidelines sentencing range that was lowered by the crack-related amendments to the Sentencing Guidelines. To determine whether Duvall's sentence was based on a Guidelines sentencing range, we must analyze the role of Duvall's Rule 11(c)(1)(C) plea agreement in sentencing.

Rule 11(c)(1)(C) plea agreements allow the prosecutor and the defendant to agree on a determinate sentence or sentencing range, which is then submitted to the judge for

approval. *See* Fed. R. Crim. P. 11(c)(1)(C); *United States v. Berry*, 618 F.3d 13, 16 (D.C. Cir. 2010). If the judge accepts the agreement with the agreed-upon sentence, the judge may not impose a different sentence without allowing the defendant to withdraw his plea. *See* Fed. R. Crim. P. 11(c)(5)(B). Before a Rule 11(c)(1)(C) plea agreement is approved, moreover, the judge must calculate the applicable Guidelines sentencing range and consider the Guidelines. *See* 18 U.S.C. § 3553(a)(4); U.S. SENTENCING GUIDELINES MANUAL § 6.B1.2(c).

In cases involving Rule 11(c)(1)(C) plea agreements, it can be difficult to determine what the sentence is "based on" for purposes of the Section 3582(c)(2) sentence reduction provision. Section 3582(c)(2) applies only if the sentence was based on a Guidelines sentencing range. Is the sentence in a Rule 11(c)(1)(C) case based on the plea agreement? Is it based on a Guidelines sentencing range? On both?

The Supreme Court recently addressed that question in *Freeman v. United States*, 131 S. Ct. 2685 (2011). *Freeman* was a splintered decision: Four Justices concluded that sentences under Rule 11(c)(1)(C) plea agreements are "based on" the Guidelines sentencing range calculated by the judge; four Justices concluded that the sentences are "based on" the plea agreement, and not "based on" a Guidelines sentencing range; and Justice Sotomayor concluded that the sentences are "based on" the plea agreement, but in a specific subset of cases are also "based on" a Guidelines sentencing range. *See id.*

For purposes of this appeal, both parties agree that Justice Sotomayor's opinion controls our analysis in light of the Supreme Court's decision in *Marks v. United States*, 430 U.S.

188, 193 (1977).[1]  Accordingly, we do not further address that question.

Justice Sotomayor's opinion sets forth two possible ways in which a Rule 11(c)(1)(C) plea agreement may be "based on" a Guidelines sentencing range, thereby making the defendant eligible for a sentence reduction under Section 3582(c)(2) if the relevant Guidelines sentencing range is later amended.

First, the plea agreement may not provide for a specific term of imprisonment but instead may explicitly provide "for the defendant to be sentenced within a particular Guidelines sentencing range." *Freeman*, 131 S. Ct. at 2697 (opinion of Sotomayor, J.).  In that situation, the defendant has been sentenced "based on" the specified Guidelines sentencing range for purposes of Section 3582(c)(2) and thus may be eligible for a sentence reduction if the relevant Guidelines sentencing range is later amended.

---

[1] The Government notes in its brief that every court of appeals to address the issue has found Justice Sotomayor's *Freeman* opinion controlling under the principle of *Marks v. United States*. 430 U.S. 188 (1977).  *Marks* stated that "the holding of the Court may be viewed as that position taken by those Members who concurred in the judgment[]" based on the "narrowest grounds." *Id.* at 193 (internal quotation marks omitted).  *See United States v. Rivera-Martínez*, 665 F.3d 344, 347-48 (1st Cir. 2011); *United States v. White*, 429 Fed. App'x 43, 47 (2d Cir. 2011) (unpublished); *United States v. Thompson*, 682 F.3d 285, 289-90 (3d Cir. 2012); *United States v. Brown*, 653 F.3d 337, 340 & n.1 (4th Cir. 2011); *United States v. Smith*, 658 F.3d 608, 611 (6th Cir. 2011); *United States v. Dixon*, 687 F.3d 356, 359-60 (7th Cir. 2012); *United States v. Browne*, 698 F.3d 1042, 1045 (8th Cir. 2012); *United States v. Austin*, 676 F.3d 924, 927 (9th Cir. 2012); *United States v. Lawson*, 686 F.3d 1317, 1321 n.2 (11th Cir. 2012).

Second, the plea agreement may provide for a specific term of imprisonment but may still "make clear that the basis for the specified term is a Guidelines sentencing range applicable to the offense to which the defendant pleaded guilty." *Id.* To fall into this category, the Guidelines sentencing range must be "evident from the agreement itself." *Id*. at 2697-98. As we read Justice Sotomayor's analysis in *Freeman*, that situation may arise when the plea agreement (i) expressly specifies the Guidelines sentencing range *and* makes clear that the Guidelines sentencing range was used by the parties to determine the agreed-upon sentence, *id.* at 2698, or (ii) expressly specifies the Guidelines offense level and criminal history category *and* makes clear that the corresponding Guidelines sentencing range was used by the parties to determine the agreed-upon sentence, *id.* at 2699-700. In those circumstances, it can be "evident from the agreement itself" that the sentence is based on a Guidelines sentencing range for purposes of Section 3582(c)(2). *Id.* at 2698. Other courts of appeals have similarly interpreted *Freeman. See United States v. Austin*, 676 F.3d 924, 930 (9th Cir. 2012); *United States v. Rivera-Martínez*, 665 F.3d 344, 349 (1st Cir. 2011); *United States v. Brown*, 653 F.3d 337, 340 (4th Cir. 2011).

In applying Justice Sotomayor's opinion, there of course may be some close calls at the margins.[2] But this case is not a

---

[2] The *Freeman* analysis may prove difficult in some cases, but it is likely to be a relatively short-lived issue for the courts. At oral argument, the Assistant U.S. Attorney indicated that the U.S. Attorney's Office now drafts Rule 11(c)(1)(C) plea agreements with an eye to avoiding later litigation on the *Freeman* issue. Doing so is consistent with Justice Sotomayor's suggestion that parties draft future plea agreements to avoid this problem. *See Freeman*, 131 S. Ct. at 2699.

close call. Here, unlike in *Freeman* itself, Duvall's plea agreement neither expressly specified the Guidelines sentencing range nor expressly specified the offense level or criminal history category. The plea agreement simply stated that the parties "agree that 180 months is the appropriate sentence for this offense." Therefore, we do not even get to the separate question of whether the agreement made clear that the specified Guidelines range was used by the parties to determine the agreed-upon sentence. Applying Justice Sotomayor's analysis in *Freeman*, we conclude that Duvall's sentence was not based on a Guidelines sentencing range and that he therefore is not eligible for a sentence reduction under Section 3582(c)(2).

\* \* \*

We affirm the judgment of the District Court.

*So ordered.*

WILLIAMS, *Senior Circuit Judge*, concurring in the judgment:

I agree with the judgment of the court affirming the district court's denial of Duvall's motion to reduce his sentence under 18 U.S.C. § 3582(c)(2). I write separately to explain my disagreement with the proposition, agreed on by the parties and (quite understandably) accepted by my colleagues, that Justice Sotomayor's opinion in *Freeman v. United States*, 131 S. Ct. 2685, 2695-700 (2011), controls the outcome in this and other cases involving the application of § 3582(c)(2) to pleas under Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure. (As today's opinion points out, every appellate court to have considered the question to date has agreed on that proposition. Maj. Op. at 8.) Once we reject the view that that opinion is controlling, it remains open to us to make an independent interpretation of § 3582(c)(2)'s "based on" language, and I believe such an interpretation would, without more, call for reversal of the district court.

Our decision in *United States v. Berry*, 618 F.3d 13 (D.C. Cir. 2010), is something "more." It appears to compel the same judgment as the court here reaches. I believe the court *en banc* should reconsider the holding in *Berry*.

* * *

1. *Reaching the issue of identifying any controlling Supreme Court authority.* While our normal practice is to "decide only questions presented by the parties," *Greenlaw v. United States*, 554 U.S. 237, 244 (2008) (internal citation omitted), we are "not limited to the particular legal theories advanced by the parties," and we have discretion "to identify and apply the proper construction of governing law." *U.S.*

*Nat'l Bank of Or. v. Indep. Ins. Agents*, 508 U.S. 439, 446 (1993) (internal citation omitted). There is good reason to exercise this discretion here. I do not believe United States courts should close the door on a man's chance at release from prison on the basis of a framework (1) that eight out of nine justices of the Supreme Court have squarely rejected, and (2) that depends on the talismanic presence of special words in a plea agreement. Until *Freeman*, parties to Rule 11(c)(1)(C) agreements had no special reason to include these words, so their inclusion is completely random in relation to Congress's purposes in enacting § 3582. The peculiarity of keeping prison doors closed on such a basis justifies exercising our discretion to consider the question the parties appear to take for granted: whether Justice Sotomayor's opinion is indeed binding upon us.

2. *Ascertaining a controlling viewpoint in splintered Supreme Court opinions*. The leading Supreme Court decision on determining when two or more Supreme Court opinions can be patched together to create a controlling principle is *Marks v. United States*, 430 U.S. 188 (1977). Given our thorough interpretation of *Marks* in *King v. Palmer,* 950 F.2d 771, 781 (D.C. Cir. 1991), I will jump directly to *King*, incorporating its references back to *Marks*. I should explain first that *King* appears susceptible of two readings, a "strong" one (yielding a relatively narrow view of when such patching is correct), and a "weak" one (yielding a somewhat broader view). Under both, the opinion of Justice Sotomayor is not controlling. I start with the strong reading, which appears to me to be correct.

The question in *King* was whether there was sufficient common ground between the plurality opinion and that of Justice O'Connor in *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711 (1987) ("*Delaware Valley II*"), to control our decision about when if

ever counsel should receive a contingency enhancement under a fee-shifting statute, in addition to the "lodestar" award computed by multiplying hours worked by a reasonable hourly fee. Four justices believed that contingency enhancements "should be reserved for exceptional cases," *id*. at 728 (plurality opinion); four were at virtually the opposite end of the spectrum, believing that these enhancements would be "appropriate in most circumstances," *id*. at 741 (Blackmun, J., dissenting). The ninth, Justice O'Connor, agreed with the dissenters that "Congress did not intend to foreclose consideration of contingency in setting a reasonable fee." *Id*. at 731. Nonetheless, she joined the plurality in reversing the enhancement in *Delaware II* and specifically endorsed the plurality's conclusion "that no enhancement for risk is appropriate unless the applicant can establish that without an adjustment for risk the prevailing party 'would have faced substantial difficulties in finding counsel in the local or other relevant market.'" *Id*. (quoting plurality opinion at 733). Despite their common endorsement of the "substantial difficulties" test, however, we noted in *King* the challenges involved in finding common *content* between the plurality and Justice O'Connor under that test—"that is, determining just how 'substantial' the 'difficulties' in attracting counsel have to be, and how they must be proven." *King*, 950 F.2d at 777.

In attempting to answer the last question, we reviewed cases involving the patching of fragmented opinions. The most prominent of these is *Marks*, which considered the earlier decision of *A Book Named "John Cleland's Memoirs of a Woman of Pleasure" v. Attorney General of Massachusetts*, 383 U.S. 413 (1966) ("*Memoirs*"). There a plurality of three justices took the view that a book could be banned as obscenity if it is "utterly without redeeming social value," whereas Justices Black and Douglas would have held categorically that obscenity could never be banned. Accordingly, "[b]ecause Justices Black and Douglas had to

agree, *as a logical consequence of their own position*, with the plurality's view that anything with redeeming social value is not obscene, the plurality of three in effect spoke for five justices: *Marks*' 'narrowest grounds' approach yielded a logical result." *King*, 950 F.2d at 781 (emphasis added). By contrast, *Delaware Valley II* was "not a case in which the concurrence posits a narrow test to which the plurality *must necessarily agree as a logical consequence of its own, broader position*." *Id*. at 782 (emphasis added).

Applying this principle to the problem before us in *King*, we noted first that the question of the availability of a fee enhancement (the focus of the plurality opinion) was inseparable from the question of how to calculate such an enhancement (the virtually exclusive focus of Justice O'Connor's opinion). *Id*. at 783. And here we found a gap between Justice O'Connor and the plurality: Justice O'Connor's opinion focused solely on contingency enhancements payable in the market, with no ceiling, while the plurality analyzed the claim's risk of not prevailing at trial and imposed a ceiling of one-third of the lodestar. *Id*. We concluded, "Because [Justice O'Connor's] answer to [the] question [of how to calculate the enhancement] is so clearly at odds with that of the plurality, . . . we are left without a controlling opinion . . . ." *Id*.

Returning to the general principle, we drew a contrast with the situation in *Arizona v. Fulminante*, 499 U.S. 279 (1991), which used two distinct *majorities* to arrive at a judgment, so that *both* constituted binding law. That, we said, was quite different from the situation "the *Marks* methodology addresses, where there is *no explicit majority agreement on all the analytically necessary portions of a Supreme Court opinio*n." *King*, 950 F.2d at 784 (emphasis added). Obviously we saw our task as resolving whether one

could find implicit "majority agreement on all the analytically necessary portions of a Supreme Court opinion."

It seems quite obvious that there is no overlap at all between "the analytically necessary portions" of the plurality's opinion in *Freeman* (which looks to the sentencing judge's explicit or implicit reasoning) and that of Justice Sotomayor (which looks to the presence or absence of specific phrases in the plea agreement). Thus on the strong view of *King* Justice Sotomayor's view cannot control in this circuit.

I now turn to the "weak" reading of *King*. The basis for such a reading would be disregard of the language cited above requiring agreement by the plurality with the other opinion "as a logical consequence of its own, broader position." I can see no basis for such disregard, but it is conceivable that others employing legal reasoning could find a route to such a view. This weak reading would seem to require only that as a purely factual matter cases producing an *outcome* in favor of the defendant under Justice Sotomayor's opinion would invariably yield an outcome in his favor under the plurality view. Even under that view, however, the conditions for coalescing the opinions of the *Freeman* plurality and of Justice Sotomayor are missing.

In *Freeman* a four-justice plurality believed that § 3581(c)(2) permitted a "district court to revisit a prior sentence to whatever extent the sentencing range in question was a relevant part of the analytic framework the judge used to determine the sentence or to approve the agreement." *Freeman*, 131 S. Ct. at 2692-93 (plurality opinion). Four justices dissented, preferring a categorical bar for any § 3582(c)(2) reduction following a Rule 11(c)(1)(C) agreement, arguing that the sentence was "based on" the plea, not on the Guidelines at all. *Id.* at 2701 (Roberts, C.J., dissenting). Justice Sotomayor, writing alone, rejected the

dissent's categorical rule, but regarded the statute as allowing a district court to revise a sentence when "a [Rule 11(c)(1)(C)] agreement expressly uses a Guidelines sentencing range applicable to the charged offense to establish the term of imprisonment," *id.* at 2695, or when "a plea agreement [that] provide[s] for a specific term of imprisonment—such as a number of months—[] also make[s] clear that the basis for the specified term is a Guidelines sentencing range applicable to the offense to which the defendant pleaded guilty," *id*. at 2697-98.

While a coincidence of result will doubtless be common between Justice Sotomayor's opinion and the plurality's, Justice Sotomayor's opinion is not a subset of the plurality's in *Freeman*. Below I describe a case where Justice Sotomayor would grant relief but the plurality would deny it.

Suppose a defendant pleads guilty to distributing five kilograms of cocaine base (before adoption in 2008 of Amendment 706, reducing the penalties for crack). This puts his Guidelines base offense level at 36. See USSG § 2D1.1(c) (drug table at (2)) (as amended in 2007). Since he has accepted responsibility, he is entitled to a 3-point reduction of his offense level, to 33. See *id*. § 3E1.1. Suppose also that the defendant has been in and out of prison over the past 15 years as a result of five prior convictions for non-drug offenses, each resulting in imprisonment terms of more than 13 months. Suppose finally that two of these prior offenses were felony crimes of violence. This criminal history earns our hypothetical defendant 15 criminal history points, producing a criminal history category of VI. See *id*. § 4A1.1, § 5A (table). According to the Sentencing Table, an offense level of 33 and a criminal history level of VI yield a sentencing range of 235-293 months. All this is duly recorded in the plea agreement, which further agrees on a sentence of 262 months and makes

no mention of the career offender provisions of the Guidelines.

Suppose now that the sentencing judge, in reviewing the plea agreement under Rule 11(c)(1)(C), disagrees with its approach. The judge reasons that the defendant's two prior convictions for crimes of violence make the defendant a career offender, per USSG § 4B1.1(a). Since the maximum statutory sentence for the defendant's crime is life, see 21 U.S.C § 841(b)(1)(A)(iii), the judge determines that the defendant's offense level is 37, and his criminal history category is VI (as it is for all career offenders under the Guidelines). See USSG § 4B1.1(b). The judge then ascertains that the defendant is entitled to a 3-point reduction for acceptance of guilt, which provides a final offense level of 34. *Id.* The judge consults the table and determines that, *contra* the plea agreement, the defendant's sentencing range should be 262-327 months.

The sentencing judge could, at that point, reject the plea agreement because of its mode of calculation. But suppose he accepts it, as the agreed-on 262 months is within what he regards as the correct range. By doing so, he has imposed a sentence identical to that in the plea agreement, but seemingly based on a Guideline range that (as it turns out) was not lowered by Amendment 706 (or any other retroactive amendment). By contrast, the sentence in the plea agreement is explicitly traceable to a Guideline range that Amendment 706 lowered.

For this hypothetical, Justice Sotomayor would accept a § 3582(c) reduction: the agreement's sentence includes the magic words of a range and points directly to a subsequently amended Guideline. The generally more expansive plurality opinion, however, would apparently reject the reduction: the Guideline altered by Amendment 706 would not have been "a

relevant part of the analytic framework the judge used to determine the sentence or to approve the agreement." *Freeman*, 131 S. Ct. at 2692-93 (plurality opinion).

Cases such as this will occur any time the parties to a Rule 11(c)(1)(C) agreement agree to ignore some aspect of an alleged offense that would trigger a mandatory minimum or a mandatory enhancement that the sentencing judge deems inappropriate to ignore, but the agreement yields an ultimate sentence that the judge regards as otherwise "sufficient, but not greater than necessary," to achieve the goals of sentencing as required by 18 U.S.C. § 3553(a).

3. *"[B]ased on a sentencing range that has subsequently been lowered by the Sentencing Commission" interpreted without controlling Supreme Court authority.* In the absence of a binding Supreme Court opinion, we must determine when a sentence is "based on a sentencing range that has subsequently been lowered by the Sentencing Commission." 18 U.S.C. § 3582(c)(2). I think it fair to say that Congress's concern in the choice of these words was not with "based on" but with the succeeding phrase—"a sentencing range that has subsequently been lowered by the Sentencing Commission." It wanted to make clear that the district court's sentence reduction authority was not to be all-purpose, but linked to a range that an amendment had "lowered." Bearing that in mind, I would give the statutory language a natural reading, roughly tracking (but perhaps broader than) the *Freeman* plurality's view. At least as a first approximation, it would embrace a sentence pursuant to a Rule 11(c)(1)(C) plea agreement if (1) the plea is to a charge governed by a Guideline subsequently amended pursuant to 28 U.S.C. § 994(o); and (2) there is no trumping factor incorporated into the sentence (or the agreed-upon range, if the plea proceeds by that device, see Rule 11(c)(1)(C)), such as a mandatory minimum for use of weapons or career offender status, which

trumping factor remains unaltered by the Guidelines amendment in question. Of course in a case where a sentence segment meets these criteria but is supplemented by a separate add-on for time that cannot run concurrently, see, e.g., 18 U.S.C. § 924(c)(1)(A), § 3582(c)(2) would apply to the segment meeting the criteria.

Such analysis corresponds with ordinary uses of the phrase "based on." A sentence under these circumstances is "based on" the Guidelines just as *West Side Story* is based on *Romeo & Juliet*: the basis is not exclusive, but significant enough to justify use of the phrase by ordinary English-speaking persons.

Passing this test, of course, would only get the defendant in the door of § 3582(c)(2); what happens next lies within the sound discretion of the district court. Consider for example a judge whose regular practice, for expressly stated reasons, has been to replace the once-prevailing crack-to-powder ratio of 100-to-1 with a 1-to-1 ratio. *United States v. Lewis*, 623 F. Supp. 2d 42, 45-47 (D.D.C. 2009). Where the Guideline affecting the defendant's sentence has simply been changed to a closer approximation of crack-powder identity (as has been typically true in the recent run of cases), it would make no sense for such a judge to make a further reduction. (Nor, of course, would it make sense for another judge who for some reason must rule on a proposed § 3582(c)(2) modification of a sentence imposed by such a judge.)

4. *The impact of our decision in* Berry. Duvall's agreement would pass the test formulated above. But for another problem, I would therefore reverse and remand the district court's denial of the motion for reduction of his sentence (at least I would do so unless briefing on the matters discussed above, which I would have urged my colleagues to order, had persuaded me to modify the above views). Our

precedent in *United States v. Berry*, 618 F.3d 13 (D.C. Cir. 2010), however, directs the opposite result. There the defendant sought to gain the benefit of a § 3582(c)(2) reduction after a Rule 11(c)(1)(C) plea to a crack charge. The plea agreement stipulated a sentence of 168 months, although Berry was potentially subject to career offender status and a concomitant range of 262 to 327 months. *Berry*, 618 F.3d at 15. Berry argued (in the proceeding under § 3582(c)(2)) that the sentence imposed reflected agreement on a sentencing range of 168 to 210 months, which followed from the crack quantity and other aspects of the offense—absent any role for career offender status. *Id.* at 16. The agreement itself did not explain how the parties had reached the term of 168 months, *id.*, but the inference that they elected to disregard the potential career offender penalties is inescapable.

Putting aside the "based on" language at issue here and in *Berry* itself, the *Berry* panel turned to other language in § 3582(c)(2) which neither party had briefed—the clause allowing a reduction only if it "is consistent with applicable policy statements issued by the Sentencing Commission." It then turned to USSG § 1B1.10(a)(2)(B), which says that a sentence reduction under § 3582(c)(2) is not authorized if the amendment "does not have the effect of lowering the defendant's applicable guideline range." This would seem to me merely a reformulation of the obvious meaning of § 3582(c)(2)—that the amended Guideline in question must have been the source of the original sentence range. Without considering that possibility, the court held that the "applicable guideline range" under § 1B1.10(a)(2)(B) was the career-offender range, which was potentially applicable but which the government had never asked the sentencing court to apply. 618 F.3d at 17-18.

The gist of *Berry* is then as follows: Notwithstanding that the government and defendant had *agreed* on a sentence that

in no way relied on the career-offender provisions, and that the sentencing court had accepted that agreement, and that the parties had never litigated the applicability of the career-offender provisions, the court of appeals brought those provisions into the case; the effect was to prevent the grant of a § 3582(c)(2) motion directed to a sentence that appeared to have been based on a match-up between a specific later-amended Guideline and the facts of the offense (apart from facts bringing the career-offender provisions into play, which the parties had agreed not to apply). I can find no warrant for that in the statute or the Guidelines.

The *Berry* approach seems, moreover, to contradict the rule that a § 3582(c)(2) proceeding is not an occasion to correct sentencing errors unrelated to the amended guideline. *Dillon v. United States*, 130 S. Ct. 2683, 2693-94 (2010). It cannot be that *Dillon* applies only to thwart corrections that favor the defendant, but allows retroactive reconfigurations of the sentence actually imposed, to imagine a sentencing that *might have occurred,* a whole alternative universe, in order to deny relief for a defendant whose sentence was, by hypothesis, "based on" a retroactively amended guideline.[1]

Nevertheless, *Berry* is the law of the circuit. Because Duvall was potentially subject to a mandatory life sentence, his case is indistinguishable from Berry's. We must therefore affirm the district court's denial of his motion for a reduced sentence, and do likewise in future cases unless and until the court *en banc* should see fit to overturn *Berry*.

---

[1] Unless the defendant satisfied the "based on" requirement, or the court assumed in his favor that he did so, he would lose without regard to the provisions invoked by *Berry*.