Justice Ginsburg
delivered the opinion of the Court.
This case concerns the role of courts in our adversarial system. The specific question presented: May a United States Court of Appeals, acting on its own initiative, order an increase in a defendant’s sentence? Petitioner Michael J. Greenlaw was convicted of various offenses relating to drugs and firearms, and was sentenced to imprisonment for 442 months. He appealed urging, inter alia, that his sentence was unreasonably long. After rejecting all of Greenlaw’s arguments, the Court of Appeals determined, without Government invitation, that the applicable law plainly required a prison sentence 15 years longer than the term the trial court had imposed. Accordingly, the appeals court instructed the trial court to increase Greenlaw’s sentence to 622 months. We hold that, absent a Government appeal or cross-appeal, the sentence Greenlaw received should not have been increased. We therefore vacate the Court of Appeals’ judgment.
I
Greenlaw was a member of a gang that, for years, controlled the sale of crack cocaine in a southside Minneapolis neighborhood. See United States v. Carter, 481 F. 3d 601, 604 (CA8 2007) (case below). To protect their drug stash and to prevent rival dealers from moving into their territory, gang members carried and concealed numerous weapons. See id., at 605. For his part in the operation, Greenlaw was charged, in the United States District Court for the District of Minnesota, with eight offenses; after trial, he was found *241 guilty on seven of the charges. App. to Pet. for Cert. 16a-17a.
Among Greenlaw’s convictions were two for violating 18 U. S. C. § 924(c)(1)(A), which prohibits carrying a firearm during and in relation to a crime of violence or a drug trafficking crime: His first § 924(c) conviction was for carrying a firearm in connection with a crime committed in 1998; his second, for both carrying and discharging a firearm in connection with a crime committed in 1999. App. to Pet. for Cert. 17a. A first conviction for violating § 924(c) carries a mandatory minimum term of 5 years, if the firearm is simply carried. § 924(c)(1)(A)(i). If the firearm is also discharged, the mandatory minimum increases to 10 years. § 924(e)(1)(A)(iii). For “a second or subsequent conviction,” however, whether the weapon is only carried or discharged as well, the mandatory minimum jumps to 25 years. § 924(c)(1)(C)(i). Any sentence for violating § 924(c), moreover, must run consecutively to “any other term of imprisonment,” including any other conviction under § 924(c). § 924(c)(1)(D)(ii).
At sentencing, the District Court made an error. Over the Government’s objection, the court held that a § 924(c) conviction does not count as “second or subsequent” when it is “charged in the same indictment” as the defendant’s first § 924(c) conviction. App. 59,61-62. The error was plain because this Court had held, in Deal v. United States, 508 U. S. 129 (1993), that when a defendant is charged in the same indictment with more than one offense qualifying for punishment under § 924(c), all convictions after the first rank as “second or subsequent,” see id., at 132-137.
As determined by the District Court, Greenlaw’s sentence included 262 months (without separately counting sentences that ran concurrently) for all his convictions other than the two under § 924(c). For the first § 924(c) offense, the court imposed a 5-year sentence in accord with § 924(c)(1)(A)(i). As to the second § 924(c) conviction, the District Court re *242 jected the Government’s request for the 25-year minimum prescribed in § 924(c)(1)(C) for “second or subsequent” offenses; instead, it imposed the 10-year term prescribed in § 924(c)(1)(A)(iii) for first-time offenses.[1] The total sentence thus calculated came to 442 months.
Greenlaw appealed to the United States Court of Appeals for the Eighth Circuit, urging, inter alia, that the appropriate total sentence for all his crimes was 15 years. See 481 F. 3d, at 607. The Court of Appeals found no merit in any of Greenlaw’s arguments. Id., at 606-607. Although the Government did not appeal or cross-appeal, id., at 608, it did note, on brief and at oral argument, the District Court’s error: Greenlaw’s sentence should have been 15 years longer than the 442 months imposed by the District Court, the Government observed, because his second § 924(c) conviction called for a 25-year (not a 10-year) mandatory minimum consecutive sentence.
The Government made the observation that the sentence was 15 years too short only to counter Greenlaw’s argument that it was unreasonably long. See App. 84-86; Recording of Oral Arg. in United States v. Carter, No. 05-3391 (CA8, Sept. 26, 2006), at 16:53-19:04, available at http://www. ca8.uscourts.gov/oralargs/oaFrame.html (as visited June 13, 2008). Having refrained from seeking correction of the District Court’s error by pursuing its own appeal, the Government simply urged that Greenlaw’s sentence should be affirmed.
The Court of Appeals acknowledged that the Government, while objecting at sentencing to the trial court’s erroneous reading of § 924(c)(1)(C), had elected to seek no appellate court alteration of Greenlaw’s sentence. 481 F. 3d, at 608. Relying on the “plain-error rule” stated in Federal Rule of Criminal Procedure 52(b), however, the appeals court held *243 that it had discretion to raise and correct the District Court’s error on its own initiative. 481 F. 3d, at 608-609. The Court of Appeals therefore vacated the sentence and instructed the District Court “to impose the [statutorily mandated] consecutive minimum sentence of 25 years.” Id., at 611.
Petitioning for rehearing and rehearing en banc, Greenlaw asked the Eighth Circuit to adopt the position advanced by the Seventh Circuit in United States v. Rivera, 411 F. 3d 864 (2005). App. 95. “By deciding not to take a cross-appeal,” the Seventh Circuit stated, “the United States has ensured that [the defendant’s] sentence cannot be increased.” 411 F. 3d, at 867. The Eighth Circuit denied rehearing without an opinion. App. to Pet. for Cert. 28a. On remand, as instructed by the Court of Appeals, the District Court increased Greenlaw’s sentence by 15 years, yielding a total prison term of 622 months. App. 103-104, 109.
Greenlaw petitioned for certiorari noting a division among the Circuits on this question: When a defendant unsuccessfully challenges his sentence as too high, may a court of appeals, on its own initiative, increase the sentence absent a cross-appeal by the Government? In response, the Government “agree[d] with [Greenlaw] that the court of appeals erred in sua sponte remanding the case with directions to enhance petitioner’s sentence.” Brief in Opposition 12. We granted review and invited Jay T. Jorgensen to brief and argue this case, as amicus curiae, in support of the Court of Appeals’ judgment. 552 U. S. 1087 and 1135 (2008). Mr. Jorgensen accepted the appointment and has well fulfilled his assigned responsibility.
II
In our adversary system, in both civil and criminal cases, in the first instance and on appeal, we follow the principle of party presentation. That is, we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present. To the extent courts *244 have approved departures from the party presentation principle in criminal cases, the justification has usually been to protect a pro se litigant’s rights. See Castro v. United States, 540 U. S. 375, 381-383 (2003).[2] But as a general rule, “[o]ur adversary system is designed around the premise that the parties know what is best for them, and are responsible for advancing the facts and arguments entitling them to relief.” Id., at 386 (Scalia, J., concurring in part and concurring in judgment).[3] As cogently explained:
“[Courts] do not, or should not, sally forth each day looking for wrongs to right. We wait for cases to come to us, and when they do we normally decide only questions presented by the parties. Counsel almost always know a great deal more about their cases than we do, and this must be particularly true of counsel for the United States, the richest, most powerful, and best represented litigant to appear before us.” United States v. Samuels, 808 F. 2d 1298, 1301 (CA8 1987) (R. Arnold, J., concurring in denial of reh’g en banc).
The cross-appeal rule, pivotal in this case, is both informed by, and illustrative of, the party presentation principle. Under that unwritten but longstanding rule, an appellate court may not alter a judgment to benefit a nonappealing party. This Court, from its earliest years, has recognized that it takes a cross-appeal to justify a remedy in favor of an *245 appellee. See McDonough v. Dannery, 3 Dall. 188, 198 (1796). We have called the rule “inveterate and certain.” Morley Constr. Co. v. Maryland Casualty Co., 300 U. S. 185, 191 (1937).
Courts of Appeals have disagreed, however, on the proper characterization of the cross-appeal rule: Is it “jurisdictional,” and therefore exceptionless, or a “rule of practice,” and thus potentially subject to judicially created exceptions? Compare, e. g., Johnson v. Teamsters Local 559, 102 F. 3d 21, 28-29 (CA1 1996) (cross-appeal rule “is mandatory and jurisdictional”), with, e.g., American Roll-On Roll-Off Carrier, LLC v. P & O Ports Baltimore, Inc., 479 F. 3d 288, 295-296 (CA4 2007) (“cross-appeal requirement [is] one of practice, [not] a strict jurisdictional requirement”). Our own opinions contain statements supporting both characterizations. Compare, e. g., Morley Constr. Co., 300 U. S., at 187 (cross-appeal rule defines “[t]he power of an appellate court to modify a decree” (emphasis added)), with, e. g., Langnes v. Green, 282 U. S. 531, 538 (1931) (cross-appeal requirement is “a rule of practice which generally has been followed”).
In El Paso Natural Gas Co. v. Neztsosie, 526 U. S. 473, 480 (1999), we declined to decide “the theoretical status” of the cross-appeal rule. It sufficed to point out that the rule was “firmly entrenched” and served to advance “institutional interests in fair notice and repose.” Ibid. “Indeed,” we noted, “in more than two centuries of repeatedly endorsing the cross-appeal requirement, not a single one of our holdings has ever recognized an exception to the rule.” Ibid. Following the approach taken in Neztsosie, we again need not type the rule “jurisdictional” in order to decide this case.
Congress has eased our decision by specifying the instances in which the Government may seek appellate review of a sentence, and then adding this clear instruction: Even when a United States Attorney files a notice of appeal with *246 respect to a sentence qualifying for review, “[t]he Government may not further prosecute [the] appeal without the personal approval of the Attorney General, the Solicitor General, or a deputy solicitor general designated by the Solicitor General.” 18 U. S. C. § 3742(b). Congress thus entrusted to named high-ranking officials within the Department of Justice responsibility for determining whether the Government, on behalf of the public, should seek a sentence higher than the one imposed. It would severely undermine Congress’ instruction were appellate judges to “sally forth” on their own motion, cf. supra, at 244, to take up errors adverse to the Government when the designated Department of Justice officials have not authorized an appeal from the sentence the trial court imposed.[4]
This Court has recognized that “the Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case.” United States v. Nixon, 418 U. S. 683, 693 (1974). We need not decide whether comparable authority and discretion are lodged in the Executive Branch with respect to the pursuit of issues on appeal. We need only recognize that Congress, in § 3742(b), has accorded to the top representatives of the United States in litigation the prerogative to seek or forgo appellate correction of sentencing errors, however plain they may be. That measure should garner the Judiciary’s full respect.
*247 III
A
In ordering the District Court to add 15 years to Green-law’s sentence, despite the absence of a cross-appeal by the Government, the Court of Appeals identified Federal Rule of Criminal Procedure 52(b) as the source of its authority. See 481 F. 3d, at 608-609, and n. 5. Rule 52(b) reads: “A plain error that affects substantial rights may be considered even though it was not brought to the court’s attention.” Nothing in the text or history of Rule 52(b) suggests that the rulemakers, in codifying the plain-error doctrine, meant to override the cross-appeal requirement. See Advisory Committee’s Notes on Fed. Rule Crim. Proc. 52, 18 U. S. C. App., p. 1664 (describing Rule 52(b) as “a restatement of existing law”).
Nor do our opinions support a plain-error exception to the cross-appeal rule. This Court has indeed noticed, and ordered correction of, plain errors not raised by defendants, but we have done so only to benefit a defendant who had himself petitioned the Court for review on other grounds. See, e. g., Silber v. United States, 370 U. S. 717 (1962) (per curiam). In no case have we applied plain-error doctrine to the detriment of a petitioning party. Rather, in every case in which correction of a plain error would result in modification of a judgment to the advantage of a party who did not seek this Court’s review, we have invoked the cross-appeal rule to bar the correction.
In Chittenden v. Brewster, 2 Wall. 191 (1865), for example, the appellants asserted that an award entered in their favor was too small. A prior decision of this Court, however, made it plain that they were entitled to no award at all. See id., at 195-196 (citing Jones v. Green, 1 Wall. 330 (1864)). But because the appellee had not filed a cross-appeal, the Court left the award undisturbed. See 2 Wall., at 196. Strunk v. United States, 412 U. S. 434 (1973), decided over a *248 century later, is similarly illustrative. There, the Court of Appeals had determined that the defendant was denied his right to a speedy trial, but held that the proper remedy was reduction of his sentence as compensation for the delay, not dismissal of the charges against him. As petitioner in this Court, the defendant sought review of the remedial order. See id., at 435. The Court suggested that there may have been no speedy trial violation, as “it seem[ed] clear that [the defendant] was responsible for a large part of the . .. delay.” Id., at 436. But because the Government had not raised the issue by cross-petition, we considered the case on the premise that the defendant had been deprived of his Sixth Amendment right, id., at 437, and ruled that dismissal of the indictment was the proper remedy, id., at 439-440.
Even if there might be circumstances in which it would be proper for an appellate court to initiate plain-error review, sentencing errors that the Government refrained from pursuing would not fit the bill. Heightening the generally applicable party presentation principle, Congress has provided a dispositive direction regarding sentencing errors that aggrieve the Government. In § 3742(b), as earlier explained, see supra, at 245-246, Congress designated leading Department of Justice officers as the decisionmakers responsible for determining when Government pursuit of a sentencing appeal is in order. Those high officers, Congress recognized, are best equipped to determine where the Government’s interest lies. Rule 52(b) does not invite appellate court interference with their assessment.
B
Amicus supporting the Eighth Circuit’s judgment links the argument based on Rule 52(b) to a similar argument based on 28 U. S. C. § 2106. See Brief for Amicus Curiae by Invitation of the Court 40-43 (hereinafter Jorgensen Brief). Section 2106 states that federal appellate courts “may affirm, modify, vacate, set aside or reverse any judgment . . . law *249 fully brought before it for review.” For substantially the same reasons that Rule 52(b) does not override the cross-appeal requirement, § 2106 does not do so either. Section 2106 is not limited to plain errors, much less to sentencing errors in criminal cases — it applies to all cases, civil and criminal, and to all errors. Were the construction amicus offers correct, § 2106 would displace the cross-appeal rule cross the board. The authority described in § 2106, we have observed, “must be exercised consistent with the requirements of the Federal Rules of Civil Procedure as interpreted by this Court.” Unitherm Food Systems, Inc. v. Swift-Eckrich, Inc., 546 U. S. 394, 402-403, n. 4 (2006). No different conclusion is warranted with respect to the “inveterate and certain” cross-appeal rule. Morley Constr. Co., 300 U. S., at 191.
C
In defending the Court of Appeals’ judgment, amicus places heavy weight on an argument pinned not to Rule 52(b) or 28 U. S. C. § 2106, but to the text of 18 U. S. C. § 3742, the Criminal Code provision governing appellate review of criminal sentences. As amicus reads §3742, once either party appeals a sentence, the Court of Appeals must remand “any illegal sentence regardless of whether the remand hurts or helps the appealing party.” Jorgensen Brief 9. Congress so directed, amicus argues, by instructing that, upon review of the record, a court of appeals “shall determine whether the sentence . . . was imposed in violation of law,” § 3742(e) (2000 ed. and Supp. V) (emphasis added), and “shall remand” if it so determines, § 3742(f)(1) (2000 ed., Supp. V) (emphasis added). See Jorgensen Brief 10-11, and n. 3.
Amicus makes a further text-based observation. He notes that § 3742(f)(2)—the provision covering sentences “outside the applicable [G]uideline range”—calls for a remand only where a departure from the Federal Sentencing Guidelines harms the appellant. In contrast, amicus emphasizes, § 3742(f)(1)—the provision controlling sentences *250 imposed “in violation of law” and Guidelines application errors — contains no such appellant-linked limitation. The inference amicus draws from this distinction is that Congress intended to override the cross-appeal rule for sentences controlled by § 3742(f)(1), i. e., those imposed “in violation of law” (or incorrectly applying the Guidelines), but not for Guidelines departure errors, the category covered by § 3742(f)(2). See id., at 14-15.
This novel construction of §3742, presented for the first time in the brief amicus filed in this Court,[5] is clever and complex, but ultimately unpersuasive. Congress enacted § 3742 in 1984. See Sentencing Reform Act, § 213(a), 98 Stat. 2011. At that time, the cross-appeal requirement was a solidly grounded rule of appellate practice. See supra, at 244-245. The inference properly drawn, we think, is that Congress was aware of the cross-appeal rule, and framed §3742 expecting that the new provision would operate in harmony with the “inveterate and certain” bar to enlarging judgments in favor of an appellee who filed no cross-appeal. Cf. Astoria Fed. Sav. & Loan Assn. v. Solimino, 501 U. S. 104, 108 (1991) (“Congress is understood to legislate against a background of common-law adjudicatory principles.”).
Congress indicated awareness of the cross-appeal rule in an earlier measure, the Organized Crime Control Act of 1970 (OCCA), Pub. L. 91-452, 84 Stat. 922, which provided for review of sentences of “dangerous special offenders.” See § 1001(a), id., at 948-951. For that Act, Congress crafted an explicit exception to the cross-appeal rule. It ordered that an appeal of a sentence taken by the Government “shall be deemed the taking of [an appeal] by the defendant.” Id., at 950. But the “deeming” ran in only one direction: “[A] *251 sentence may be made more severe,” OCCA provided, “only on review ... taken by the United States.” Id., at 950-951.[6] When Congress repealed this provision and, in § 3742, broadly provided for appellate review of sentences, it did not similarly express in the new text any exception to the cross-appeal rule. In short, Congress formulated a precise exception to the cross-appeal rule when that was its intention. Notably, the exception Congress legislated did not expose a defendant to a higher sentence in response to his own appeal. Congress spoke plainly in the 1970 legislation, leaving nothing for a court to infer. We therefore see no reason to read the current statute in the inventive manner amicus proposes, inferring so much from so little.
Amicus’ reading of §3742, moreover, would yield some strange results. We note two, in particular. Under his construction, §3742 would give with one hand what it takes away with the other: Section 3742(b) entrusts to certain Government officials the decision whether to appeal an illegally low sentence, see supra, at 245-246; but according to amicus, §§ 3742(e) and (f) would instruct appellate courts to correct an error of that order on their own initiative, thereby trumping the officials’ decision. We resist attributing to Congress an intention to render a statute so internally inconsistent. Cf. Western Air Lines, Inc. v. Board of Equalization of S. D., 480 U. S. 123, 133 (1987) (“The illogical results of applying [a proffered] interpretation . . . argue strongly against the conclusion that Congress intended th[o]se results . . . .”). Further, the construction proposed by amicus would draw a puzzling distinction between incorrect applications of the Sentencing Guidelines, controlled by § 3742(f)(1), and erroneous departures from the Guidelines, covered by *252 § 3742(f)(2). The latter would be subject to the cross-appeal rule, the former would not. We do not see why Congress would want to differentiate Guidelines decisions this way.[7]
D
In increasing Greenlaw’s sentence by 15 years on its own initiative, the Eighth Circuit did not advert to the procedural rules setting deadlines for launching appeals and cross-appeals. Unyielding in character, these rules may be seen as auxiliary to the cross-appeal rule and the party presentation principle served by that rule. Federal Rule of Appellate Procedure 3(a)(1) provides that “[a]n appeal permitted by law ... may be taken only by filing a notice of appeal... within the [prescribed] time.” (Emphasis added.) Complementing Rule 3(a)(1), Rule 4(b)(1)(B)(ii) instructs that, when the Government has the right to cross-appeal in a criminal case, its notice “must be filed . . . within 30 days after . . . the filing of a notice of appeal by any defendant.” (Emphasis added.) The filing time for a notice of appeal or cross-appeal, Rule 4(b)(4) states, may be extended “for a period not to exceed 30 days.” Rule 26(b) bars any extension beyond that time.
The firm deadlines set by the Appellate Rules advance the interests of the parties and the legal system in fair notice and finality. Thus a defendant who appeals but faces no cross-appeal can proceed anticipating that the appellate court will not enlarge his sentence. And if the Government *253 files a cross-appeal, the defendant will have fair warning, well in advance of briefing and argument, that pursuit of his appeal exposes him to the risk of a higher sentence. Given early warning, he can tailor his arguments to take account of that risk. Or he can seek the Government’s agreement to voluntary dismissal of the competing appeals, see Fed. Rule App. Proc. 42(b), before positions become hardened during the hours invested in preparing the case for appellate court consideration.
The strict time limits on notices of appeal and cross-appeal would be undermined, in both civil and criminal cases, if an appeals court could modify a judgment in favor of a party who filed no notice of appeal. In a criminal prosecution, moreover, the defendant would appeal at his peril, with nothing to alert him that, on his own appeal, his sentence would be increased until the appeals court so decreed. In this very case, Greenlaw might have made different strategic decisions had he known soon after filing his notice of appeal that he risked a 15-year increase in an already lengthy sentence.
E
We note that nothing we have said in this opinion requires courts to modify their current practice in so-called “sentencing package cases.” Those cases typically involve multicount indictments and a successful attack by a defendant on some but not all of the counts of conviction. The appeals court, in such instances, may vacate the entire sentence on all counts so that, on remand, the trial court can reconfigure the sentencing plan to ensure that it remains adequate to satisfy the sentencing factors in 18 U. S. C. § 3553(a) (2000 ed. and Supp. V). In remanded cases, the Government relates, trial courts have imposed a sentence on the remaining counts longer than the sentence originally imposed on those particular counts, but yielding an aggregate sentence no longer than the aggregate sentence initially imposed. See Brief for United States 23, n. 11 (citing, inter alia, United States v. *254 Pimienta-Redondo, 874 F. 2d 9 (CA1 1989) (en banc)). Thus the defendant ultimately may gain nothing from his limited success on appeal, but he will also lose nothing, as he will serve no more time than the trial court originally ordered.
The practice the Government describes is not at odds with the cross-appeal rule, which stops appellate judges from adding years to a defendant’s sentence on their own initiative. It simply ensures that the sentence “ ‘will suit not merely the offense but the individual defendant.’ ” Pimienta-Redondo, 874 F. 2d, at 14 (quoting Wasman v. United States, 468 U. S. 559, 564 (1984)). And the assessment will be made by the sentencing judge exercising discretion, not by an appellate panel ruling on an issue of law no party tendered to the court.[8]
This is not a “sentencing package” case. Greenlaw was unsuccessful on all his appellate issues. There was no occasion for the Court of Appeals to vacate his sentence and no warrant, in the absence of a cross-appeal, to order the addition of 15 years to his sentence.[9]
*255 * * *
For the reasons stated, the judgment of the United States Court of Appeals for the Eighth Circuit is vacated, and the case is remanded for further proceedings consistent with this opinion.

It is so ordered.

 The court added 10 years rather than 5 based on the jury’s finding that the firearm Greenlaw carried in connection with the second § 924(c) offense had been discharged. See App. 44-45, 59-60.

 Because this case does not present the issue, we take no position on whether correction of an error prejudicial to a nonappealing criminal defendant might be justified as a measure to obviate the need for a collateral attack. See post, at 261-262 (Alito, J., dissenting).

 Cf. Kaplan, Civil Procedure—Reflections on the Comparison of Systems, 9 Buffalo L. Rev. 409, 431-432 (1960) (U. S. system “exploits the free-wheeling energies of counsel and places them in adversary confrontation before a detached judge”; “German system puts its trust in a judge of paternalistic bent acting in cooperation with counsel of somewhat muted adversary zeal”).

 The dissent reads § 3742(b) not as a restraint on sua sponte error correction by appellate courts, but simply as apportioning “authority within an executive department.” Post, at 266; see post, at 267 (“[PJerhaps Congress wanted to ... giv[e] high-level officials the authority to nix meritless or marginal [sentencing appeals].”). A statute is hardly needed to establish the authority of the Attorney General and Solicitor General over local U. S. Attorneys on matters relating to the prosecution of criminal cases, including appeals of sentences. It seems unlikely, moreover, that Congress, having lodged discretion in top-ranking Department of Justice officers, meant that discretion to be shared with more than 200 appellate judges.

 An appellee or respondent may defend the judgment below on a ground not earlier aired. See United States v. American Railway Express Co., 265 U. S. 425, 435 (1924) (“[T]he appellee may, without taking a cross-appeal, urge in support of a decree any matter appearing in the record .. ..”).

 The Controlled Substances Act of 1970, § 409(h), 84 Stat. 1268-1269, contained matching instructions applicable to “dangerous special drug offender[s].” The prescriptions in both Acts were replaced by § 3742. See Sentencing Reform Act of 1984, §§ 212(2), 213(a), 219, 98 Stat. 1987, 2011, 2027.

 In rejecting the interpretation of §§ 3742(e) and (f) proffered by amicus, we take no position on the extent to which the remedial opinion in United States v. Booker, 543 U. S. 220 (2005), excised those provisions. Compare Rita v. United States, 551 U. S. 338, 361-362 (2007) (Stevens, J., concurring) (Booker excised only the portions of § 3742(e) that required de novo review by courts of appeals), with 551 U. S., at 382, 383 (Scalia, J., concurring in part and concurring in judgment) (Booker excised all of §§ 3742(e) and (f)). See also Kimbrough v. United States, 552 U. S. 85, 116 (2007) (Thomas, J., dissenting) (the Booker remedial opinion, whatever it held, cannot be followed).

 The dissent suggests that our reading of the cross-appeal rule is anomalous because it could bar a court of appeals from correcting an error that would increase a defendant’s sentence, but after a “successful” appeal the district court itself could rely on that same error to increase the sentence. See post, at 264-265, and n. 2. The cross-appeal rule, we of course agree, does not confine the trial court. But default and forfeiture doctrines do. It would therefore be hard to imagine a case in which a district court, after a court of appeals vacated a criminal sentence, could properly increase the sentence based on an error the appeals court left uncorrected because of the cross-appeal rule. What of cases remanded post-Booker on defendants’ appeals, the dissent asks? Post, at 265, n. 2. In those cases, defendants invited and received precisely the relief they sought, and the Sixth Amendment required. Neither the cross-appeal rule nor default and forfeiture had any role to play.

 For all its spirited argument, the dissent recognizes the narrow gap between its core position and the Court’s. The cross-appeal rule, rooted in the principle of party presentation, the dissent concedes, should hold sway in the “vast majority of cases.” Post, at 259. Does this case qualify as the “rare” exception to the “strong rule of practice” the dissent advo *255 cates? See ibid. Greenlaw was sentenced to imprisonment for 442 months. The Government might have chosen to insist on 180 months more, but it elected not to do so. Was the error so “grossly prejudicial,” post, at 262, 264, so harmful to our system of justice, see post, at 262, as to warrant sua sponte correction? By what standard is the Court of Appeals to make such an assessment? Without venturing to answer these questions, see post, at 268, n. 3, the dissent would simply “entrust the decision to initiate error correction to the sound discretion of the courts of appeals,” post, at 256. The “strong rule” thus may be broken whenever the particular three judges composing the appellate panel see the sentence as a “wron[g] to right.” See supra, at 244 (internal quotation marks omitted). The better answer, consistent with our jurisprudence, as reinforced by Congress, entrusts “the decision [whether] to initiate error correction” in this matter to top counsel for the United States. See supra, at 246.