*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1675**

State of Minnesota,
Respondent,

vs.

Thomas Wayne Eilertson,
Appellant.

**Filed January 5, 2015
Affirmed
Cleary, Chief Judge**

Ramsey County District Court
File No. 62-CR-12-67

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Peter R. Marker, Assistant County Attorney,
St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Benjamin J. Butler, Assistant
Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Cleary, Chief Judge; Peterson, Judge; and Hudson,

Judge.

**U N P U B L I S H E D   O P I N I O N**

**CLEARY**, Chief Judge

Following this court's remand, *State v. Eilertson*, No. A13-1682, 2014 WL

4288636 (Minn. App. Sept. 2, 2014) ("*Eilertson I*"), the district court assigned a severity

level IV to appellant's unranked offenses of filing a fraudulent financial statement – not related to a valid lien, in violation of Minn. Stat. § 609.7475, subds. 2(1)(i)(A), 3(b)(1) (2008). The district court resentenced appellant to concurrent sentences on each of 12 counts, and imposed a downward durational departure on each count. The sentence imposed on the first count was the same 23-month aggregate sentence that the court had originally imposed.

On appeal, appellant argues that the district court abused its discretion in assigning a severity level IV to these unranked offenses because the court based its ranking on elements of an offense of which appellant was not convicted; that the offense of conviction is more similar to offenses ranked at a severity level I or II; and that the court improperly increased the severity level ranking following his appeal. Because the district court did not abuse its discretion in assigning a severity level IV to these unranked offenses, we affirm.[1]

## FACTS

In January 2012, appellant and his wife were separately charged with 46 felony counts of filing fraudulent financing statements, in violation of Minn. Stat. § 609.7475, and one count of filing a fraudulent instrument with the registrar of titles, in violation of Minn. Stat. § 508.80 (2008). The complaint alleged that in 2009, the couple's home went into foreclosure and was eventually sold at a sheriff's sale in December 2009. The couple vacated the home sometime before sheriff's deputies arrived to physically evict them on July 2, 2010.

---

[1] This appeal has been expedited to the special term panel.

Between 2009 and May 2010, appellant and his wife filed Uniform Commercial Code (UCC) liens against people associated with the foreclosure of their home, based on instructions they received from "P.K.," a person they met on the internet. The couple used the name "Blessings of Liberty" rather than their own names on these liens, after being instructed by P.K. that doing so would insulate them from civil or criminal liability. These liens, filed with the Minnesota Secretary of State's Office, totaled $114 billion. The liens were filed against private attorneys and law firms, companies involved with the mortgage and foreclosure proceeding, and Hennepin County public officials including the sheriff, registrar of titles, examiner of titles, county attorney, assistant county attorneys, district court administrator, and chief judge.[2]

According to the complaint, police seized thousands of documents and other evidence related to the filing of these liens during the execution of a search warrant of the couple's home in June 2010. During the course of a conversation with the police investigator, appellant and his wife "spoke in a manner that suggested they were both fully participating in the process of filing liens against people" and "indicated that they would release all of the liens that they filed if they could just have the title to their home." Appellant acknowledged to the investigator that determination of the amount of the liens was "arbitrary."

---

[2] The practice of filing false or fraudulent financing statements, liens, or judgments against attorneys and public officials is sometimes referred to as "paper terrorism." *See* Christopher A. Young, *Minnesota Has New Weapons in the Fight Against "Paper Terrorism,"* 76 Hennepin Law., Sept. 2007, at 17; *see also Monroe v. Beard*, 536 F.3d 198, 202-03 (3rd Cir. 2008) (discussing problems associated with prison inmates' filing of fraudulent liens against public officials).

A computer was also seized that revealed a number of recorded conversations between appellant and his wife and P.K. During those conversations, appellant and his wife asked P.K. how to file liens against people and how to use the UCC to create binding contracts with people who do not respond to the notices. P.K. described how appellant and his wife could use the UCC to '"do death by a thousand papercuts."' Based on these conversations, it became clear to the investigator that appellant and his wife used the liens "as a means to intimidate or seek revenge against people."

For each filed lien, the complaint alleged that appellant had committed two offenses: the offense of filing a fraudulent financing statement − not related to a valid lien, in violation of Minn. Stat. § 609.7475, subd. 2(1)(i)(A), and the offense of filing a fraudulent financing statement − with the intent to harass or defraud, in violation of Minn. Stat. § 609.7475, subd. 2(2). Each count was enhanced to a felony under section 609.7475, subdivision 3(b)(1), based on the allegation that the offenses were committed with the intent to influence or otherwise tamper with a judicial proceeding or with intent to retaliate against a judicial officer, prosecutor, defense attorney, or officer of the court because of that person's performance of official duties in connection with a judicial proceeding. Minn. Stat. § 609.7475, subd. 3(b)(1). As a result, all of the counts involved intent to influence or tamper with a judicial proceeding or intent to retaliate against a person because of that person's performance of his official duties in connection with a judicial proceeding.

On April 4, 2013, the state offered appellant a plea deal that was eventually accepted by appellant. The prosecutor set out the terms as follows:

> [T]he offer as outlined previously - - and I must state on the record that it's contingent on both of them pleading guilty, but it is for the defendants to enter pleas to Count 1, 5, 11, 15, 18, 20, 22, 24, 26, 32, 34, and 36. That would be one count for each of the victims alleged in the complaint.
>
> Since this is an unranked offense, that the parties would agree that this would be sentenced as a level three offense.

The 12 counts to which appellant pleaded charged appellant with felony filing of fraudulent financing statements – not related to a valid lien. The prosecutor agreed to dismiss all of the counts charging appellant with felony filing of fraudulent financing statements – with intent to harass or defraud.

At sentencing on June 7, 2013, the prosecutor requested that the court assign a severity level III to the offenses based on the plea agreement and based on the fact that the offenses were similar to other level III theft offenses, including insurance fraud, defeating security on realty, and defeating security on personalty, *see* Minn. Stat. §§ 609.611, .615, .62 (2008). The district court agreed with the state's arguments, and imposed 12 concurrent sentences for the felony offense of filing a fraudulent or false financing statement – not related to a valid lien, with the convictions on the final six counts calculated at sentences of 23 months in prison. On appeal, appellant challenged the district court's decision to assign a severity level III to the offenses, claiming that the offenses should be ranked at a severity level I or II and that the court should not have been influenced by the parties' plea agreement.

In *Eilertson I*, this court stated that the district court failed to address how the elements of the three severity level III offenses cited by the prosecutor were similar to

appellant's offenses, and suggested that other offenses ranked at a severity level IV, including felony aggravated stalking and felony violation of a harassment restraining order, are more similar. *Id.*, 2014 WL 4288636, at *2-3. This court further stated that the district court improperly "substituted the parties' discretion for its own" when it relied on appellant's "plea agreement with the state to decide the severity level." *Id.* at *4. Concluding that "the record does not contain any rationale supporting [appellant's] sentence," this court "reverse[d] and remand[ed] for resentencing so that the district court may make the necessary findings to assign a severity level to [appellant's] unranked offenses." *Id.*

On remand, after considering the parties' arguments and this court's decision in *Eilertson I*, the district court assigned a severity level IV to appellant's offenses and imposed a downward durational departure so that appellant's aggregate sentence would not exceed the 23-month aggregate sentence he had originally received. In this appeal, appellant challenges the district court's decision to assign a severity level IV to his unranked offenses.

**D E C I S I O N**

This court reviews the district court's severity level assignment to an unranked offense for an abuse of discretion. *State v. Bertsch*, 707 N.W.2d 660, 666 (Minn. 2006). When a district court imposes a sentence for an unranked offense, it must exercise its discretion by assigning an appropriate severity level and making findings to support the reasons for making that assignment. *State v. Kenard*, 606 N.W.2d 440, 442 (Minn. 2000).

6

In *Kenard*, the supreme court set out the following factors that a district court should consider when assigning a severity level to an unranked offense: (1) the gravity of the conduct underlying the proof of the elements of the offense; (2) the severity level of ranked offenses that are similar to the unranked offense; (3) the severity level assigned to other offenders for the same unranked offense; and (4) the severity level assigned to other offenders who engaged in similar conduct. 606 N.W.2d at 443. The supreme court in *Bertsch* made it clear that this list is nonexclusive and that no one factor is controlling. 707 N.W.2d at 666.

1.      **The district court did not abuse its discretion on remand by assigning a severity level IV to appellant's offenses.**

Appellant argues that the district court on remand erred by relying on elements of the separate and distinct crime of filing fraudulent financing statements – intent to harass or defraud, when ranking his offense of filing false financing statements – not related to a valid lien. Appellant correctly notes that this court in *Eilertson I* cited the wrong section of the statute when referring to appellant's offenses of conviction. *Id.*, 2014 WL 4288636, at *2.[3] However, the reference to the wrong statutory section in *Eilertson I* does not render the district court's decision on remand to be an abuse of discretion.

The district court on remand properly considered the *Kenard* factors, particularly the second factor which examines the severity level of ranked offenses that are similar to

_____

[3] Appellant was convicted of filing fraudulent financing statements – not a valid lien, in violation of Minn. Stat. § 609.7475, subd. 2(1)(i)(A), rather than filing fraudulent financing statements – intent to harass or defraud, in violation of Minn. Stat. § 609.7475, subd. 2(2). This court, in *Eilertson I*, incorrectly referenced Minn. Stat. § 609.7475, subd. 2(2).

these unranked offenses. In assigning a severity level IV to appellant's offenses, the district court on remand correctly reasoned that section 609.7475, subdivision 3(b)(1), which makes these offenses a felony, requires an intent similar to felony aggravated stalking or felony violation of a harassment restraining order, because the offenses all require proof of intent to influence or tamper with a judicial proceeding or otherwise retaliate against a public official involved in a judicial proceeding. *See* Minn. Stat. §§ 609.7475, subd. 3(b)(1), .748, subd. 6(d)(5), .749, subd. 3(a)(4) (2008). Appellant's conviction of felony filing of a fraudulent financing statement – not a valid lien, thus requires a heightened intent that is identical to felony stalking and harassment offenses and makes appellant's offenses more egregious and less similar to the severity level I and II offenses cited by appellant involving paper crimes with minimal economic loss or other harm.

Appellant argues that because his offenses do not involve the "front-end" intent required for harassment or stalking, any comparison to those offenses is inappropriate. However, this argument ignores the fact that the "back-end" required intent for appellant's unranked offenses are identical to other severity level IV crimes that require the intent to influence or tamper with a judicial proceeding or to retaliate against an official because of his or her performance of official duties related to a judicial proceeding. It is this "back-end" intent that distinguishes appellant's offenses from the severity level I and II offenses cited by appellant, or from the severity level III offenses discussed in *Eilertson I* as not "sufficiently similar" to appellant's offenses. *Id.*, 2014 WL 4288636, at *2.

In addition, the penalties for felony filing a false or fraudulent lien are identical to the penalties for the offenses of felony aggravated stalking and felony violation of a harassment restraining order, which are ranked as severity level IV offenses. As noted in *Eilertson I*, all three offenses are included under the statutory headnote of "Public Misconduct or Nuisance" crimes. *Id.* at *3. Moreover, the statutory penalties for these three offenses are identical, allowing for imprisonment of not more than five years or to payment of a fine of not more than $10,000, or both. *See* Minn. Stat. §§ 609.7475, subd. 3(b)(1), .748, subd. 6(d)(5), .749, subd. 3(a)(4). The supreme court has used a similar comparison of statutory penalties when conducting an analysis of the second *Kenard* factor. *See State v. Huynh*, 519 N.W.2d 191, 198 (Minn. 1994) (affirming severity level VIII ranking for defendant's crime of racketeering, in part because "penalties for racketeering are similar to the penalties for offenses ranked by the Guidelines as severity level VIII offenses, such as first degree assault," which indicates that the "legislature clearly intended to punish severely those persons who engage in racketeering"). The similarities between the characterization and penalties for these three severity level IV offenses give some indication that the legislature "clearly intended to punish severely those persons" who engage in the felony offense of filing a fraudulent financing statement – not related to a valid lien. *Id.* We therefore conclude that the district court did not abuse its discretion in assigning a severity level IV to appellant's unranked offenses.

While the district court in this case did not specifically discuss the other three *Kenard* factors, consideration of at least the first *Kenard* factor also supports assignment

9

of a severity level IV to appellant's offenses. That first factor allows a district court to consider the gravity of the defendant's underlying conduct. *Kenard*, 606 N.W.2d at 443 n.3 ("By specific conduct, we mean that conduct underlying proof of the elements of the offense. While we have held that such conduct cannot be relied on to justify an upward departure, *State v. Peterson*, 329 N.W.2d 58, 60 (Minn. 1983), we conclude that its use is appropriate for setting the severity level for unranked offenses.").

In this case, appellant's underlying conduct involved the systematic filing of numerous liens against the people and public officials he believed were involved or associated with the foreclosure of his home. Appellant filed these liens in an effort to delay or halt that judicial process, targeted persons involved in that process, and acknowledged that the amounts of the liens were arbitrary. Appellant's crime involved substantial losses to the sense of security of the individuals who were targeted and to the taxpayers of the county who rely upon public records to convey accurate and meaningful information. Consideration of the gravity of appellant's underlying conduct also supports the district court's decision to assign a severity level IV to the offense. *See Huyhn*, 519 N.W.2d at 198.

We therefore conclude that the district court did not abuse its discretion in assigning a severity level IV to appellant's offenses.[4]

---

[4] The fourth *Kenard* factor, which involves consideration of the severity level assigned to other offenders who engaged in similar conduct, and the third *Kenard* factor, which allows consideration of the severity level assigned to other offenders for the same unranked offense, have not been addressed by the parties and were not considered by the district court on remand. Appellant and his wife appear to be among the first to be prosecuted under this statute, which went into effect in 2006. *See* 2006 Minn. Laws ch.

10

**2.** **This court's decision in Eilertson I and the district court's decision to increase the severity level ranking following appellant's first appeal did not violate appellant's rights.**

Appellant argues that this court "had no authority to contend that the district court had ranked the offense too low." Appellant suggests that this court, in *Eilertson I*, violated the longstanding principles of "party presentation" in that "an appellate court may not alter a judgment to benefit a nonappealing party." *Greenlaw v. United States*, 554 U.S. 237, 245, 128 S. Ct. 2559, 2564 (2008). Appellant asserts that "[b]y implying that this offense should have been ranked at severity level 4, the court of appeals altered the judgment and attempted to offer the non-cross-appealing party a 'remedy' for an error the party itself did not contend existed."

However, if appellant truly believed that this court in *Eilertson I* "altered the judgment" and granted relief to the state that it had not sought, then his appeal was not successful. His remedy, at that point, would have been to file a petition for further review with the supreme court. Appellant did not do so, and chose to return to the district court for resentencing. In any event, this court's discussion in *Eilertson I* of severity level IV offenses could be described as dicta, and this court did not direct the district court on remand to assign that severity level to appellant's offenses.

Appellant next asserts that the district court's decision to increase the severity level ranking following his "successful" appeal exceeded the scope of the remand and improperly punished him for appealing his sentence. A district court is given broad

260, art. 7, § 13. Appellant's wife was sentenced at a severity level III, as agreed to in the plea agreement, and does not appear to have challenged that assignment or her sentence.

discretion to determine how to proceed on remand and may act in any way not inconsistent with the remand instructions provided by this court. *State v. Montermini*, 819 N.W.2d 447, 454-55 (Minn. App. 2012) (rejecting appellant's claim that the district court's decision on remand to vacate guilty pleas that he had not sought to withdraw and convictions from which he had not appealed violated the scope of the remand articulated by this court), *review denied* (Minn. Nov. 20, 2012). This court in *Eilertson I* reversed and remanded to the district court to make findings to support assignment of a severity level to appellant's offenses, and the district court's decision on remand was not inconsistent with *Eilertson I*'s remand instructions.

Nor did the district court's decision to increase the severity level improperly punish appellant for appealing his sentence. In *State v. Delk*, 781 N.W.2d 426, 429 (Minn. App. 2010), *review denied* (Minn. July 20, 2010), this court rejected a defendant's argument that the district court on remand had to impose a sentence that was no more than 12 months above the "middle-of-the-box" sentence originally imposed and reversed on appeal. This court acknowledged that while the district court could not impose a longer sentence than the originally imposed sentence, the sentence imposed on remand in *Delk* was actually shorter than the original sentence even though it was higher in the presumptive range than the original sentence. *Id.*

In this case, in order to impose a sentence no longer than the original 23-month sentence, the district court had to impose a downward durational departure from the now 30-month presumptive sentence (based on a severity level IV). As the state notes, assigning a severity level IV, rather than a severity level III, will not affect appellant's

12

criminal history because both are worth one point. *See* Minn. Sent. Guidelines II.B.1.a. (2008). Consistent with *Delk*, appellant's sentence on remand is not more onerous than the originally imposed 23-month sentence. *See Greenlaw*, 554 U.S. at 253-54, 128 S. Ct. at 2569-70 (noting that the practice, in remanded cases, of imposing a sentence on remaining counts longer than sentence originally imposed, but yielding aggregate sentence no longer than aggregate sentence initially imposed, is "not at odds with the cross-appeal rule, which stops appellate judges from adding years to a defendant's sentence on their own initiative").

We therefore affirm both the district court's decision on remand to assign a severity level IV to appellant's unranked offenses and the sentences imposed by the district court.

**Affirmed.**