FILED
United States Court of Appeals
Tenth Circuit

May 19, 2026

Christopher M. Wolpert
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

MITCHEL CROW,

    Defendant - Appellant.

No. 24-1377

_____

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 1:22-CR-00015-RM-1)**
_____

Howard A. Pincus, Assistant Federal Public Defender (Virginia L. Grady, Federal Public Defender, with him on the briefs), Office of the Federal Public Defender, District of Colorado, Denver, Colorado, for Defendant-Appellant.

Rajiv Mohan, Assistant United States Attorney (Peter McNeilly, United States Attorney, with him on the brief), Office of the United States Attorney, District of Colorado, Denver, Colorado, for Plaintiff-Appellee.
_____

Before **HOLMES**, Chief Judge, **BACHARACH** and **MORITZ**, Circuit Judges.
_____

**BACHARACH**, Circuit Judge.
_____

This case concerns a criminal defendant's right to pretrial notice of the government's rebuttal evidence. We ask: Is that right triggered when a governmental witness responds to evidence that the defendant himself hadn't disclosed? We answer *no*.

## 1.    Mr. Crow is found guilty after a battle of experts.

This issue grows out of charges against Mr. Mitchel Crow for sexually abusing a minor at a military base. *See* 18 U.S.C. § 2243(a). The abuse was undisputed because Mr. Crow admitted having sex with a girl who was living with him.

But the parties disagreed as to Mr. Crow's state of mind: He argued that he hadn't knowingly engaged in sex because he was asleep the whole time, and the government argued that Mr. Crow was awake during the sex. For this dispute, the two sides engaged expert witnesses. Mr. Crow's expert witness, Dr. Clete Kushida, opined in his report that the girl's descriptions of the sexual encounters were consistent with sexsomnia, a disorder that can cause someone to engage in sex while asleep. The government responded with testimony by another expert witness, Dr. Michel A. Cramer Bornemann.

Before trial, Dr. Bornemann had provided the defense with a report, opining that the girl's descriptions of sexual encounters in her bedroom involved too many complicated steps to suggest sexsomnia. These steps included opening the girl's bedroom door, entering her bedroom, partially

2

disrobing, getting into her bed, having sex with her, dressing, and closing the bedroom door. The jury addressed the disagreement by finding Mr. Crow guilty on the counts involving sexual encounters in the girl's bedroom.[1]

## 2. At trial, Dr. Bornemann responded to Dr. Kushida's new opinions.

Testifying for the defense, Dr. Kushida

- reiterated his opinion in the report that Mr. Crow's actions were consistent with sexsomnia and

- presented new opinions related to *malingering*, which refers to a patient's report of "false symptoms."

R. vol. 5, at 581, 597–602. Dr. Bornemann listened to the testimony about malingering and disagreed.

He wanted to testify about his disagreement. So the government invited defense counsel to talk with Dr. Bornemann. Defense counsel complained and requested a new written disclosure. The government then provided notes about Dr. Bornemann's new opinions. Defense counsel objected to the adequacy of these notes. The district court overruled the objection, permitting testimony about the new opinions and giving defense counsel a chance to briefly interview Dr. Bornemann before cross-examining him.

---

[1]    The jury also found Mr. Crow guilty on a count involving oral sex, but this appeal does not address that count.

3

### 3.    The government didn't violate a disclosure requirement.

On appeal, Mr. Crow argues that the district court erred in allowing the government to present Dr. Bornemann's new opinions without providing enough time to adequately interview him before cross-examining.[2] On this basis, Mr. Crow seeks reversal of the convictions on the counts involving sexual encounters in the girl's bedroom.

Mr. Crow's argument assumes that the government had a duty to disclose Dr. Bornemann's new opinions. To determine whether such a duty existed, we apply de novo review. *See United States v. Freeman*, 70 F.4th 1265, 1286 (10th Cir. 2023) ("Interpretation of the Federal Rules of Criminal Procedure is a legal issue subject to de novo review.").

The disclosure requirements for rebuttal testimony appear in Federal Rule of Criminal Procedure 16. *See* Fed. R. Crim. P. 16(a)(1)(G).[3] But a threshold issue exists about the applicability of these requirements.

---

[2]    The government argues that Mr. Crow forfeited this argument by complaining at trial only about the form of the government's disclosure. We disagree. Mr. Crow objected at trial not only about the form of the disclosure, but also about its timing and substance. R. vol. 5, at 648 (defense counsel arguing in district court that Federal Rule of Criminal Procedure 16 requires "disclosure in advance," not "on the stand").

[3]    Rule 16(a)(1)(G) establishes two governmental duties that could potentially apply: (1) the duty to disclose rebuttal testimony and (2) the duty to disclose testimony "on the issue of the defendant's mental condition." Rule 16(a)(1)(G)(i). Mr. Crow and the government focus only on the duty to disclose rebuttal testimony. So we need not consider the scope of the government's independent obligation to disclose testimony regarding the defendant's mental condition. *See Greenlaw v. United States*,

When the criminal proceedings began, Rule 16 didn't say that the government needed to disclose rebuttal testimony. Instead, the rule required disclosure only for "testimony that the government intend[ed] to use" during its case-in-chief. Fed. R. Crim. P. 16(a)(1)(G) (2021); *see also United States v. Frazier*, 387 F.3d 1244, 1269 (11th Cir. 2004) (stating that "the government's presentation of *rebuttal* testimony without prior notice does not violate Rule 16, since the Rule's notice requirements apply to the government's case-in-chief" (emphasis in original)).

In 2022, Rule 16 was amended to require disclosure of the government's rebuttal testimony. Fed. R. Crim. P. 16(a)(1)(G)(i) (2022); *see also* 28 U.S.C. § 2072 (Supreme Court's power to prescribe rules of procedure). The new version of Rule 16 took effect on December 1, 2022, and would govern in criminal cases "thereafter commenced." Order Adopting Amendment to the Federal Rules of Criminal Procedure (Apr. 11, 2022). In addition, however, the district court could exercise its discretion to apply the new version of Rule 16 to pending cases (like this one) "insofar as just and practicable." *Id.*

The district court didn't discuss the justice or practicability of applying the 2022 amendments, and the parties haven't addressed the issue.

---

554 U.S. 237, 243 (2008) (principle of party presentation requires courts to "rely on the parties to frame the issues for decision").

5

So we assume for the sake of argument that we should apply the new version of Rule 16.

Even with this assumption, the new version of Rule 16 wouldn't have required pretrial disclosure of Dr. Bornemann's rebuttal testimony.[4] This rule states that if the defendant timely discloses expert testimony, the government must comply with a request to disclose rebuttal testimony countering the defense expert. *See* Fed. R. Crim. P. 16(a)(1)(G)(i) (2022) (requiring disclosure in writing "for any testimony that the government intends to use . . . during its rebuttal to counter testimony that the defendant has timely disclosed under (b)(1)(C)").[5] The government's duty

---

[4]    Mr. Crow states that the government "essentially admitted" that it had violated Rule 16 by failing to disclose Dr. Bornemann's rebuttal testimony. Appellant's Opening Br. at 33. This statement is inaccurate. The government

- flagged a "disclosure issue," explaining that Dr. Bornemann disagreed with Dr. Kushida's trial testimony and wanted to testify about his disagreement, and

- suggested that the defense had rejected an offer to interview Dr. Bornemann about what he would say in rebuttal.

In these statements, the government didn't admit that it had violated Rule 16.

[5]    The district court gave Mr. Crow a specified time period to disclose expert testimony about his mental condition. Disc. Conf. Mem. & Order at 7, ¶ II(C), *attached to* Appellant's Mot. to Supp. R. on Appeal. Mr. Crow obtained extensions of time and complied with the extended deadline when disclosing Dr. Kushida's report.

of disclosure thus turns on whether the rebuttal testimony would counter an opinion that the defendant had timely disclosed.[6]

Mr. Crow alleges that the government violated Rule 16 by failing to disclose before trial that Dr. Bornemann would opine about

- whether Dr. Kushida had sufficiently accounted for the possibility of malingering and

- whether a forensic psychiatrist or testing would be necessary to determine malingering in the forensic context.[7]

These opinions would counter Dr. Kushida's testimony that the defense had not timely disclosed.

Before trial, Dr. Kushida disclosed only an opinion that Mr. Crow's actions "could have been the result of" sexsomnia. R. vol. 2, at 268; *see* R. vol. 4, at 140 (Dr. Kushida testifying at a pretrial hearing that "[his] opinion in this case" is that "[i]t's compatible with sexsomnia"); R. vol. 2,

---

[6]    Mr. Crow requested disclosure of expert testimony in the government's case-in-chief, but not rebuttal testimony. Disc. Conf. Mem. & Order at 4, ¶ I(A)(9), *attached to* Appellant's Mot. to Supp. R. on Appeal. But the government provided the defense with a report of Dr. Bornemann's opinions and called him in rebuttal rather than in the case-in-chief. So we assume for the sake of argument that Mr. Crow could invoke the rule for disclosure of expert rebuttal testimony despite the absence of such a request. *See* Fed. R. Crim. P. 16(a)(1)(G)(i) (2022) (requiring disclosure by the government "[a]t the defendant's request").

[7]    Mr. Crow states that Dr. Bornemann testified about the need for a forensic psychiatrist to address malingering in the forensic context. But Dr. Bornemann also testified that malingering could be addressed "with tests." R. vol. 5, at 695.

at 276–77 (Dr. Kushida describing the girl's account as "consistent with" Mr. Crow having "NREM parasomnias"); *see also* R. vol. 2, at 290 (defense counsel arguing that Dr. Kushida would testify only that Mr. Crow's actions "*could* have occurred as part of a NREM parasomnia" (emphasis in original)).[8] But Dr. Kushida's report didn't opine on malingering or address Mr. Crow's truthfulness.[9]

At trial, Dr. Kushida went further, adding that he didn't believe Mr. Crow had malingered in the interview to obtain a benefit from a diagnosis of sexsomnia. This testimony about malingering hadn't appeared in Dr. Kushida's report. Because Mr. Crow hadn't disclosed Dr. Kushida's new opinion about malingering, Rule 16 didn't require the government to disclose before trial how Dr. Bornemann would counter these opinions.[10]

---

[8]    Dr. Kushida defined *parasomnias* as "abnormal behaviors during sleep." R. vol. 2, at 268. He opined that *sexsomnia* was a type of parasomnia that occurred during sleep. *Id.* at 282.

[9]    In his report, Dr. Kushida referred to *malingering* only when discussing a study showing a diagnosis of sexsomnia in 46 out of 110 cases. R. vol. 2, at 38.

[10]    Mr. Crow acknowledges that the government would incur a disclosure duty for rebuttal only if the defense had disclosed its witness's expected testimony. Appellant's Opening Br. at 33–34. But the defense hadn't told the government that Dr. Kushida would testify about malingering.

After all, how could the government have said how it would respond to opinions by Dr. Kushida that he himself hadn't revealed?[11]

Mr. Crow disagrees, arguing that (1) Dr. Bornemann's new opinions addressed matters in Dr. Kushida's report and (2) the government had opened the door to testimony about malingering. We reject both arguments.

Mr. Crow insists that Dr. Bornemann's new opinions challenged only the opinions in Dr. Kushida's report. We disagree. In that report, Dr. Kushida had opined only about the consistency of Mr. Crow's actions with sexsomnia; the report hadn't addressed whether Mr. Crow was malingering. *See* pp. 7–8, above.

Despite that omission, Mr. Crow contends that his attorney raised malingering at trial only to counter the government's cross-examination of Dr. Kushida. There Dr. Kushida conceded the possibility of a "secondary gain" from Mr. Crow's inability to remember the sexual encounters. R. vol. 5, at 564. To undercut that concession, defense counsel elicited an opinion from Dr. Kushida that he didn't believe that Mr. Crow had been malingering.

---

[11]    Defense counsel says on appeal that Dr. Kushida's report opined that "Mr. Crow suffered from sexsomnia." Appellant's Opening Br. at 35. But other defense counsel said that Dr. Kushida was opining only that Mr. Crow's actions *could* have resulted from sexsomnia. R. vol. 2, at 290; *see* pp. 7–8, above.

When Dr. Kushida testified about secondary gain, he was acknowledging an objective fact: Mr. Crow had an incentive not to recall the sex because of the criminal charges. But Dr. Kushida's testimony about malingering went further by opining that Mr. Crow had been truthful in saying what he remembered. This was the first mention of an opinion about Mr. Crow's truthfulness or the possibility of malingering. Until then, Dr. Kushida had said only that he would address the consistency of Mr. Crow's behavior with symptoms of sexsomnia. *See* pp. 7–8, above.[12] Dr. Kushida's new opinion about malingering may have been permissible, but it wasn't disclosed before trial. So the government had no corresponding duty to tell the defense before trial how Dr. Bornemann would respond.[13]

---

[12]  In his report, Dr. Bornemann had mentioned malingering when describing his process for evaluating possible sleep disorders, noting that inconsistent information during evaluations could raise a concern about malingering. But Dr. Bornemann didn't refer to malingering when explaining his opinions. *See* Appellant's Reply Br. at 7 (defense counsel arguing that Dr. Bornemann's report didn't include an opinion about malingering).

[13]  After Mr. Crow filed his opening brief, the parties addressed a separate duty to supplement disclosures under Rule 16(c). In its answer brief, for example, the government argued that

- this case implicates the duty to supplement disclosures and

- the duty to supplement was satisfied.

*See* Fed. R. Crim P. 16(c); *see also* Fed. R. Crim. P. 16(a)(1)(G)(vi) (requiring the government to supplement or correct each expert disclosure in accordance with Rule 16(c)). In response, Mr. Crow maintained that Rule 16(c) did not apply. Because Mr. Crow relied only on Rule

**4.      The absence of a disclosure obligation requires us to affirm.**

Mr. Crow also suggested in his reply brief that even if the government hadn't violated Rule 16, we should reverse the convictions involving sexual encounters in the bedroom because the district court had acted unfairly in refusing to allow more time for counsel to interview Dr. Kushida. But Mr. Crow waived this suggestion by relying in his opening brief on a violation of Rule 16; the reply brief was too late to urge reversal absent a violation of the rule. *United States v. Leffler*, 942 F.3d 1192, 1197–98 (10th Cir. 2019). So we decline to consider Mr. Crow's suggestion that we should reverse even without a violation of Rule 16.

**5.      Conclusion**

Mr. Crow has not shown a violation of the government's duty of pretrial disclosure. The failure to make that showing requires us to affirm the convictions involving sexual encounters in the girl's bedroom.

Affirmed.

---

16(a)(1)(G)(i), we need not address the duty of supplementation under Rule 16(c).