# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
MULLIGAN, FEBBO, and WOLFE
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Staff Sergeant WILLIAM L. MITCHAM**
**United States Army, Appellant**

ARMY 20140969

Headquarters, Joint Readiness Training Center and Fort Polk
Randall L. Fluke, Military Judge (arraignment)
Wade N. Faulkner, Military Judge (trial)
Colonel Jan E. Aldykiewicz, Staff Judge Advocate

For Appellant: Captain Jennifer K. Beerman, JA; Mr. Sean A. Marvin, Esquire (on brief); Captain Matthew L. Jalandoni, JA; Mr. Sean A. Marvin, Esquire (on reply brief and on motion for reconsideration).

For Appellee: Colonel Mark H. Sydenham, JA; Major Cormac M. Smith, JA; Captain Linda Chavez, JA (on brief); Colonel Mark H. Sydenham, JA; Lieutenant Colonel A.G. Courie III, JA; Major Cormac M. Smith, JA; Captain Linda Chavez, JA (on response for motion for reconsideration).

30 January 2017

---------------------------------------------------------------------------------
MEMORANDUM OPINION ON REMAND ON RECONSIDERATION
---------------------------------------------------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

WOLFE, Judge:

A panel with enlisted representation acquitted appellant of stealing and mistreating a dog. The panel convicted appellant of disrespecting a superior commissioned officer, assault consummated by battery, aggravated assault with force likely to produce death or grievous bodily harm, and communicating indecent language in violation of Articles 89, 128, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 889, 928, 934 (2012) [hereinafter UCMJ]. The convening authority approved the adjudged sentence of a dishonorable discharge, confinement for two years, and reduction to the grade of E-1.

In our earlier decision, *United States v. Mitcham*, ARMY 20140969, 2016 CCA LEXIS 697 (Army Ct. Crim. App. 30 Nov. 2016) (mem. op.), we set aside the finding of guilty to indecent language but affirmed the lesser-included offense of general disorder under Article 134, UCMJ. We affirmed the remaining findings of guilty, reassessed the sentence, and affirmed the sentence as adjudged. On 28 December 2016, appellant asked that we reconsider our decision. We grant appellant's motion for reconsideration, and for the reasons explained below, provide appellant with some of his requested relief.

## BACKGROUND

During a mandatory training session appellant made offensive sexist comments.[1] Specifically, appellant stated that he could not trust women because, in a reference to women's menstrual cycles, he didn't trust anything that bled for seven days and didn't die. Appellant's battalion commander directed Captain (CPT) Chase to counsel appellant regarding his comment. While being counseled appellant refused to sign the counseling form and said to CPT Chase "Fuck this shit, I'm not going to sign this."

For this language, appellant was charged with disrespecting a superior commissioned officer. After reviewing the evidence we found the specification to be factually and legally sufficient.

## DISCUSSION

### A. The Evidence is Factually Sufficient

In *United States v. Najera*, 52 M.J. 247 (C.A.A.F. 2000) the accused was ordered to attend unit training. The accused refused, and stated "you can't make me go." That accused was subsequently convicted of disrespecting a superior commissioned officer. The Court of Criminal Appeals found the evidence legally and factually sufficient, and the Court of Appeals for the Armed Forces (CAAF) affirmed the finding of guilty for disrespecting a superior commissioned officer as legally sufficient.

Here, appellant testified regarding this offense. He stated during direct examination that he regarded the counseling as "political stuff that somebody wanted to have done" and that he didn't believe he had done anything wrong. He testified

---

[1] Appellant was convicted of using indecent language for his comments at the training session. As explained in our original decision, we found appellant's comment to be highly offensive but not "indecent." We therefore affirmed a lesser-included offense of a general disorder.

that the counseling session interfered with "things I needed to go take care of and do . . . ."  Appellant's disdain for the counseling session is palpable and leaps off the page.  Regarding the statement in question, appellant testified on direct as follows:

> Well, I was frustrated at the situation.  I sat back in my chair, and I thought about it for a moment.  I pondered.  And I said, "You know what," to myself.  I looked at Captain Chase, and he was just kind of waiting for what I was going to say.  And, I said, "Sir, this is bullshit."  I said, "You know it, I know it, Sergeant Crawford knows it.  Fuck this.  I'm not signing it, sir."

Appellant's counsel then questioned him about his actual words, and appellant clarified: "I'm pretty sure what I said, "Fuck this shit.  I'm not going to sign this because this is basically bullshit, sir."

In his own words, appellant "sat back in chair," "pondered," and then decided to launch his verbal tirade at his superior commissioned officer.  Additionally, this was one of the few parts of appellant's testimony that struck us as credible; most of the rest being obvious baloney.  Captain Chase also testified about the exchange.  He was asked: "The phrase, 'Fuck that shit,' who was that comment directed at?"  Captain Chase responded, "It was at me."[2]

Disrespectful behavior is defined as that which:

> detracts from the respect due the authority and person of a superior commissioned officer.  It may consist of acts of language, however expressed, and it is immaterial whether they refer to the superior commissioned officer as an officer or as a private individual.  Disrespect by words may be conveyed by abusive epithets or other contemptuous or denunciatory language.

*Manual for Courts-Martial, United States* (2012 ed.) [hereinafter *MCM*], Part IV, para. 13c(3).

---

[2] On cross examination, CPT Chase testified that he personally—that is, subjectively—did not feel disrespected.  Whether words are disrespectful is determined objectively, not on how thick (or thin) the skin of the recipient may happen to be.  A statement does not become disrespectful merely because the recipient is particularly sensitive.  Nor does a disrespectful statement lose its disrespectful nature merely because the recipient happens to be desensitized to its disrespectful nature.

We continue to find the offense of disrespect to be factually sufficient. Appellant's words are clearly disrespectful, especially given the context in which he said them. *See Najera*, 52 M.J. at 247 (stating a reviewing court may consider the context in which a statement is made when assessing whether it was disrespectful). After making a highly offensive and sexist comment at a unit mandatory training session, appellant was being counseled for his conduct. He then, intentionally and after contemplation, directed a profanity laced tirade *at* CPT Chase in front of at least one other non-commissioned officer. In his own words, and on direct examination, he testified that CPT Chase's action in counseling him was "bullshit." We have no hesitation in finding the evidence factually sufficient.

Moreover, we are not the initial finders of fact. In assessing factual sufficiency we must acknowledge that the trial court saw and heard the witnesses. In assessing factual sufficiency we give no deference to the trial court's findings of guilty, but we do "recognize" their ability to see the witnesses testify. *See generally United States v. Washington*, 57 M.J. 394 (C.A.A.F. 2002). To the extent that different weight could be given to the witness testimony depending on its in-court delivery, the court-martial was able to assess this evidence. Our recognition that the trial court saw the witnesses further weighs in favor of finding the evidence factually sufficient in this case.

### B. Should the Offense Be Approved?

Unusually, and the reason we granted reconsideration, the government on appeal has conceded that the evidence was *factually* insufficient. In our initial opinion we ignored this concession as we clearly came to the opposite conclusion. On reconsideration, however, we have come to view this concession in a different light.

Clearly the offense in question is *legally* sufficient, and a reasonable factfinder could determine that appellant is guilty. Nonetheless, the government argues *against* affirmance. While government *could* make a non-frivolous argument in favor of affirmance, the government has chosen instead to argue the opposite. We did not fully appreciate the uniqueness of the government's concession during our initial review.[3] When an offense is legally sufficient but the government argues factual insufficiency, it is clearly a discretionary decision. The government asks us to set aside the specification not because it has to, but because it wants to, make that argument. The government's concession is structurally similar to the prosecutor at

---

[3] We directed the government to respond to appellant's motion for reconsideration. The government argued in favor of granting the motion, and again argued that we should find appellant not guilty of the offense.

trial, while having sufficient evidence to easily survive a Rule for Courts-Martial [hereinafter R.C.M.] 917 motion and having proven the offense beyond a reasonable doubt in the mind of the panel, nonetheless arguing in favor of the court-martial returning a verdict of not guilty on the merits.

The government's concession, to be sure, does not alter our determination that the specification is factually sufficient. The UCMJ prohibits appellant's disrespectful conduct towards his commander.[4] However, it does alter our analysis on whether the specification "should be approved." Here, the United States, through counsel who are professionally obligated to represent the government's interests, asks this court to set aside the conviction.[5] "Our adversary system is designed around the premise that the parties . . . are responsible for advancing the facts and arguments entitling them to relief." *United States v. Blazier,* 68 M.J. 439, 443 (C.A.A.F. 2010) (quoting *Greenlaw v. United States*, 554 U.S. 237 (2008)), *but cf. United States v. Budka*, 74 M.J. 220 (C.A.A.F. 2015) (Courts of criminal appeals, nor CAAF, are not bound by government concessions.). Viewed in this new light, we considered two options.

First, we considered setting aside the convening authority's action and returning the case to him so that he may exercise clemency authority on behalf of the United States. The convening authority is likely the person best empowered to address this issue as it borders on nullification and equity. We rejected this option for reasons of judicial economy.

The second option, and the one we take today, is simply to disapprove the finding because it should no longer be approved. UMCJ art. 60(c). This option is likely at the outside edge of our authority, and but for the government's concession, would likely be beyond it. *See United States v. Nerad*, 69 M.J. 138 (C.A.A.F. 2010). We do not believe our decision is based in equity, as *Nerad* would prohibit, although perhaps it is a close call. Rather, in a system which pins its accuracy on the benefits

---

[4] If not prohibited by the UCMJ, the conduct is likely lawful—most certainly when concerning issues of speech. In other words, the UCMJ is not just how we punish soldiers who disobey their commander or leave their unit without authority, it is the authority for *why* a soldier must obey his commander and not go AWOL. Stated yet another way, the UCMJ is not merely the method of enforcing norms of acceptable behavior—it establishes them.

[5] Again this is a significant point. It is not government counsel who ask us to set aside the conviction because of their *personal* assessment of the evidence, it is the *United States* as sovereign.

of an adversarial contest, we should not approve a finding that neither side supports; at least on the facts of this case.[6]

## CONCLUSION

The Specification of Charge IV and Charge IV are set aside and DISMISSED. We AFFIRM our previous decision as to the remaining charges and specifications.

We are able to reassess the sentence on the basis of the error noted and do so after conducting a thorough analysis of the totality of circumstances presented by appellant's case and in accordance with the principles articulated by our superior court in *United States v. Winckelmann*, 73 M.J. 11, 15-16 (C.A.A.F. 2013) and *United States v. Sales*, 22 M.J. 305 (C.M.A. 1986). Included in our consideration is our prior decision setting aside the offense of indecent language and affirming the lesser-included offense of a general disorder. We are confident that based on the entire record and appellant's misconduct, the court-martial would have imposed a sentence of at least a dishonorable discharge, twenty months confinement, and reduction to E-1. Accordingly, we AFFIRM only so much of the sentence as provides for a dishonorable discharge, confinement for twenty months, and reduction to E-1. All rights, privileges, and property, of which appellant has been deprived by virtue of this decision setting aside portions of the findings and sentence, are ordered restored. *See* UCMJ arts. 58a(b), 58b(c), and 75(a).

Senior Judge MULLIGAN and Judge FEBBO concur.

FOR THE COURT:

JOHN P. TAITT
Deputy Clerk of Court

---

[6] We view the government's concession here as fundamentally different from when the government concedes legal error. *See Marsical v. United States*, 449 U.S. 405 (1981) (Rhenquist, J. dissenting).

6