Filed 10/19/23  P. v. Fisher CA2/4

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>SEAN CORNELIUS FISHER,<br><br>    Defendant and Appellant. | B317272<br><br>Los Angeles County<br>Super. Ct. No. SA026103 |

APPEAL from an order of the Superior Court of Los Angeles County, William C. Ryan, Judge. Affirmed in part, remanded in part with directions.

Three Strikes Project, Stanford Law School, Lara Hoffman and Milena Blake, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Idan Ivri and Nikhil Cooper, Deputy Attorneys General, for Plaintiff and Respondent.

## INTRODUCTION

Sean Cornelius Fisher appeals from the order denying his petition for recall of sentence and resentencing filed under Penal Code section 1170.126.[1] He contends reversal is required for two reasons. First, Fisher asserts the trial court violated his due process rights and the principle of party presentation because, after holding an initial hearing on his suitability for resentencing under section 1170.126, subdivision (f), it directed the People to produce for its review documents originally not offered in support of their opposition, and later developed arguments on the People's behalf relating to several of the suitability factors set forth in subdivision (g). Second, he contends the court violated his due process rights because it did not hold a second suitability hearing after receiving the People's additional documents.

For the reasons discussed below, we reject Fisher's arguments and affirm the order denying his section 1170.126 petition.

## BACKGROUND[2]

In 1996, a jury convicted Fisher of recklessly evading a police officer with willful or wanton disregard for safety of persons or property (Veh. Code, § 2800.2) and found true two prior strike allegations. (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d).) He was sentenced to a term of 25 years to life in prison. On direct appeal, a different panel of this court modified the abstract

_____

1  Unless otherwise specified, all further undesignated statutory references are to the Penal Code.

2  We omit recitation of the facts giving rise to Fisher's conviction and sentence because they are not relevant to the issues presented in this appeal.

of judgment to reflect additional custody credits awarded and otherwise affirmed the judgment. (*People v. Fisher* (July 8, 1998), B109978 [nonpub. opn.].)

In August 2014, Fisher filed his petition for relief under section 1170.126. In opposition, the People argued: (1) Fisher was ineligible for resentencing because he did not satisfy the criteria set forth in section 1170.126, subdivision (e); and (2) Fisher was unsuitable for resentencing under subdivision (f) based on the factors enumerated in subdivision (g).[3] Following a hearing on Fisher's eligibility for relief, the trial court issued a written decision concluding he satisfied the criteria in subdivision (e) and ordered the matter to proceed for determination whether he was suitable for resentencing under subdivisions (f) and (g).

In September 2016, the People filed a supplemental opposition to Fisher's petition, arguing he was unsuitable for relief because, per section 1170.126, subdivision (f), resentencing him would pose an unreasonable risk of danger to public safety. Among other things, the People asserted Fisher "is a member of the 'Black P Stone Blood[s]', which is a Security Threat Group II prison gang[,]" whose "moniker is 'Chico'."

In December 2020, at the direction of the newly-appointed District Attorney of Los Angeles County, the People conceded Fisher was suitable for resentencing under section 1170.126. Subsequently, per its procedure for processing cases in which the People file concessions, the trial court ordered the People to provide information regarding Fisher's criminal and disciplinary history. In their summary of Fisher's history, the People noted that in December 2019, the Board of Parole Hearings (BPH)

---

3      The relevant provisions of section 1170.126 are set forth in section I.A of the Discussion, *post*.

denied Fisher parole for seven years based on, among other things: (1) his 2018 Comprehensive Risk Assessment, in which he was given a score of "high risk"[4]; and (2) his "admission during [his parole] hearing of current participation within prison Bloods, including statements throughout the hearing that he is currently a STG II Blood 'elder statesman' and peace maker" who "'uses violence to stop violence or the escalation of violence[.]'"

In June 2021, the trial court received into evidence the parties' pleadings, along with all exhibits attached. The parties did not offer additional evidence or argument. The court then took the matter under submission.

The next month, the trial court issued a written order noting that, at the prior hearing, the parties did not address the People's assertions regarding Fisher's recent denial of parole and the reasons for the BPH's decision. In light of these circumstances, the court ruled as follows: "[T]he matter's submission is VACATED. The court requests that the parties address in writing the weight and significance of the People's assertions of gang activity and the [BPH's] actions. The People are also ORDERED TO PRODUCE for the [c]ourt the parole hearing transcript and Comprehensive Risk Assessment. Unless otherwise ordered by this court, the further briefing shall be filed within 15 days from the date of service of this order. The matter

---

4       Comprehensive risk assessments are written reports prepared by licensed psychologists employed by the BPH. They contain an evaluation of an inmate's risk of violence based on numerous factors, and are used by hearing panels for all initial and subsequent parole consideration hearings. (See Cal. Code Reg., tit. 15, § 2240, subds. (a), (b), & (d).)

will be deemed submitted following the filing of the further briefing, unless one of the parties requests a further hearing."

In their supplemental brief, the People "t[ook] a neutral position as to the weight and significance of 1) the gang activity as detailed by [Fisher] himself in the parole [hearing] transcript, and 2) the [BPH's] subsequent seven-year denial [of parole], and respectfully defer[red] to the court's expertise and judgment on these assertions." Although the People had yet to obtain a copy of Fisher's Comprehensive Risk Assessment, they did submit the transcript of his parole hearing.

In his supplemental reply brief, Fisher "object[ed] to the production of the additional documents [requested by the trial court] and urge[d] th[e] [c]ourt to . . . give minimal weight to the [People's] overstated assertions of gang activity and action of the [BPH]." He then argued: (1) the BPH's denial of parole is not dispositive of his suitability for resentencing under section 1170.126; (2) a psychologist retained by Fisher recently evaluated him and opined that he would not pose unreasonable risk to public safety if resentenced; and (3) while Fisher "corroborat[ed] his association with the Black P Stone Blood[,] . . . he denied being a member" and did not "actively work[ ] to maintain this association." At no point in his supplemental brief, nor at any other point in the underlying proceedings, did Fisher request a further hearing on his suitability for resentencing.

In October 2021, the trial court issued a comprehensive written decision denying Fisher's 1170.126 petition. In determining whether resentencing Fisher would pose an unreasonable danger to public safety under section 1170.126, subdivision (f), the trial court discussed the evidence before it relating to each of the factors set forth in subdivision (g). In so

5

doing, it addressed the reports from two experts retained by Fisher, as well as the evidence relating to his commitment offense, criminal history, disciplinary history, participation in rehabilitative programming, classification score assigned by the Department of Corrections and Rehabilitation, age, post-release plans, and gang involvement. With respect to gang involvement, the court recounted Fisher's comments at his 2019 BPH hearing describing his activity as an "elder statesman" in the Black P Stone Bloods, and his intention to continue engaging in such activity if paroled "'[o]nly if it's positive and only if [he's] allowed to.'"

Ultimately, the trial court concluded: "[Fisher's] modest post-release plans and the remoteness of his criminal history are outweighed by his history of violating probation or parole, extensive disciplinary history, gang affiliation, and modest rehabilitative programming that failed to address [his] admitted and current gang activity. While [Fisher] has demonstrated that he can at times conduct himself within the bounds of the law, . . . his inability to affirmatively denounce or distance himself from his gang affiliation, even upon the prospect of release, remains predictive of his behavior in the absence of further rehabilitative efforts. Accordingly, the court finds that resentencing [Fisher] would pose an unreasonable risk of danger to public safety at this time." Fisher timely appealed.

## DISCUSSION

## I. Governing Principles and Standards of Review

### A. Relevant Statutory Framework

"Section 1170.126 allows a person presently serving a three strikes sentence for a felony that is neither serious nor violent to

petition for resentencing as a second strike offender subject to certain disqualifying exceptions not relevant here. (§ 1170.126, subds. (a), (e).) If the prisoner is not subject to one of the disqualifying factors, then the trial court shall resentence him under the two strikes provision 'unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety.' (§ 1170.126, subd. (f).)" (*People v. Williams* (2018) 19 Cal.App.5th 1057, 1061.) "In exercising its discretion in subdivision (f), the court may consider: [¶] (1) The petitioner's criminal conviction history, including the type of crimes committed, the extent of injury to victims, the length of prior prison commitments, and the remoteness of the crimes; [¶] (2) The petitioner's disciplinary record and record of rehabilitation while incarcerated; and [¶] (3) Any other evidence the court, within its discretion, determines to be relevant in deciding whether a new sentence would result in an unreasonable risk of danger to public safety." (§ 1170.126, subd. (g).)

## B.    Applicable Standards of Review

Ordinarily, we review the trial court's denial of relief under section 1170.126 based on its determination of the petitioner's dangerousness for abuse of discretion. (*People v. Williams, supra*, 19 Cal.App.5th at p. 1062.) In this case, however, Fisher asserts the order denying his petition must be reversed for two reasons irrelevant to the substance of the court's dangerousness analysis.

First, Fisher asserts the trial court violated his right to due process and the principle of party presentation by: (1) directing the People to produce additional evidence for its review; and (2) relying on reasons not articulated by the People to find he was unsuitable for resentencing. Because this argument presents a

question of law based on undisputed facts, we review it de novo. (*Guardianship of Saul H.* (2022) 13 Cal.5th 827, 847 ["'the application of law to undisputed facts ordinarily presents a legal question that is reviewed de novo'" and, similarly, "review is de novo when 'the question is predominantly legal' and 'requires a critical consideration, in a factual context, of legal principles and their underlying values'"].)

Second, Fisher contends the trial court violated his right to due process because it did not hold another suitability hearing after receiving additional evidence from the People. "We review procedural due process claims de novo because "'the ultimate determination of procedural fairness amounts to a question of law.'"'" (*Kwan Software Engineering, Inc. v. Hennings* (2020) 58 Cal.App.5th 57, 82.)

## II.  Analysis

### A.  Supplemental Evidence and Briefing

Fisher contends "[t]he trial court violated [his] due process rights and the principle of party presentation when it developed arguments that the [People] did not make and ordered the [People] to provide substantiating evidence [the court] then used to deny [his] petition." (Capitalization and bolded text omitted.) In so doing, he relies principally on *United States v. Sineneng-Smith* (2020) ___ U.S. ___ [140 S.Ct. 1575, 206 L.Ed.2d 866] (*Sineneng-Smith*). As discussed below, we are not persuaded by his contention.

The defendant in *Sineneng-Smith* was convicted of violating United States Code, title 8, section 1324, subdivision

(a)(1)(A)(iv) and (B)(i) (section 1324),[5] among other offenses. (*Sineneng-Smith, supra*, 140 S.Ct. at pp. 1577-1578, 1580.) On appeal, the defendant argued: (1) the conduct with which she was charged was not proscribed by the statute of conviction; (2) a portion of that statute was unconstitutionally vague and did not provide her fair notice that her conduct was prohibited, "or should rank as a content-based restraint on her speech"; and (3) her actions were protected by the petition and free speech clauses of the First Amendment. (See *id*. at pp. 1579-1580.)

After receiving the parties' briefs and holding argument, the Ninth Circuit invited three organizations to file amicus briefs on three new issues of its own framing, including "[w]hether the statute of conviction is overbroad or likely overbroad under the First Amendment, and if so, whether any permissible limiting instruction would cure the First Amendment problem[.]" (*Sineneng-Smith, supra*, 140 S.Ct. at pp. 1580-1581.) The parties "were permitted, but 'not required,' to file supplemental briefs 'limited to responding to any and all amicus/amici briefs.'" (*Id*. at p. 1581, italics omitted.) In addition, at re-argument, the defendant's counsel was only allotted 10 minutes, whereas the invited amici were given 20 minutes. (*Ibid*.) Ultimately, the Ninth Circuit concluded section 1324, subdivision (a)(1)(A)(iv), was facially overbroad under the First Amendment, and was not susceptible to a permissible limiting construction. (*Ibid*.)

---

5    Section 1324 "makes it a federal felony to 'encourag[e] or 'induc[e] an alien to come to, enter, or reside in the United States, knowing or in reckless disregard of the fact that such coming to, entry, or residence is or will be in violation of the law.' [Citation.] The crime carries an enhanced penalty if 'done for the purpose of commercial advantage or private financial gain.'" (*Sineneng-Smith, supra,* 140 S.Ct. at p. 1577.)

The United States Supreme Court held the Ninth Circuit "departed so drastically from the principle of party presentation as to constitute an abuse of discretion." (*Sineneng-Smith, supra,* 140 S.Ct. at p. 1578.) In so doing, the court articulated the following general principles: "In our adversarial system of adjudication, we follow the principle of party presentation. As this Court stated in *Greenlaw v. United States* [(2008) 554 U.S. 237 [128 S.Ct. 2559, 171 L.Ed.2d 399]], 'in both civil and criminal cases, and in the first instance and on appeal . . . , we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present.' [Citation.] In criminal cases, departures from the party presentation principle have usually occurred 'to protect pro se litigant's rights.' [Citations.] But as a general rule, our system 'is designed around the premise that [parties represented by competent counsel] know what is best for them, and are responsible for advancing the facts and argument entitling them to relief.' [Citation.] [¶] In short: '[C]ourts are essentially passive instruments of government.' [Citation.] They 'do not, or should not, sally forth each day looking for wrongs to right. [They] wait for cases to come to [them], and when [cases arise, courts] normally decide only questions presented by the parties." (*Sineneng-Smith, supra* at p. 1579, italics and fn. omitted.)

The Supreme Court then acknowledged, "The party presentation principle is supple, not ironclad." (*Sineneng-Smith, supra,* 140 S.Ct. at p. 1479.) On this point, it noted that "a court is not hidebound by the precise arguments of counsel" (*id.* at p. 1581), and that "[t]here are no doubt circumstances in which a modest initiating role for a court is appropriate." (*Id.* at p. 1579.) However, the Supreme Court determined the case before it

10

"scarcely fit[ ] that bill." (*Ibid.*) Noting the defendant had not, at any point, challenged the statute of conviction on overbreadth grounds (*id.* at p. 1581), the court concluded the Ninth Circuit's actions amounted to an unjustified "takeover of the appeal" (*ibid.*) and a "radical transformation of [the] case [that went] well beyond the pale." (*Id.* at pp. 1581-1582.)

In contrast with the Ninth Circuit in *Sineneng-Smith*, the trial court in this case did not invite non-parties to brief a new legal issue of its own framing. (Cf. *Sineneng-Smith*, *supra*, 140 S.Ct. at pp. 1580-1581.) Instead, after taking the matter under submission, the trial court observed the People's most recent filing referenced, but did not include, evidence relevant to its determination whether resentencing Fisher would pose an unreasonable risk to public safety, i.e., his 2018 Comprehensive Risk Assessment and his comments about his gang activity at his 2019 parole hearing, which were not in the record. It then informed the parties of this gap in the record, directed the People—the party with the burden of proving Fisher's dangerousness (see *People v. Superior Court (Kaulick)* (2013) 215 Cal.App.4th 1279, 1292 (*Kaulick*))—to produce the missing evidence, and invited the parties to brief "the weight and significance" of that evidence with respect to the undisputed issue pending before it, i.e., Fisher's suitability for relief under section 1170.126, subdivisions (f) and (g).

On these facts, we conclude the trial court's solicitation of supplemental evidence and briefing did not amount to an unjustified "takeover of the [case]." (*Sineneng-Smith*, *supra*, 140 S.Ct. at p. 1581.) Instead, the court properly exercised its "power to obtain evidence upon which the judgment of the court may rest," which arises out of its "inherent power, independent of

11

statute, to exercise its discretion and control over all proceedings relating to the litigation before it." (*Johnson v. Banducci* (1963) 212 Cal.App.2d 254, 260.) Its actions were also consistent with its authority under section 1170.126, which grants the court broad discretion not only to decide Fisher's suitability for resentencing (§ 1170.126, subd. (f)), but also to consider *any* evidence it determines to be relevant to that issue. (*Id.*, subd. (g)(3).)

We also conclude the trial court did not err by denying Fisher's petition for reasons not advanced by the People. In arriving at its decision, the trial court expressly identified and considered, at length, each of the factors set forth in section 1170.126, subdivision (g). Fisher does not cite—and we could not locate—any authority establishing that, in determining his suitability for resentencing, the trial court was strictly bound by the People's arguments and/or concessions. Further, Fisher's argument is unsupported by section 1170.126, which does not contain any language tethering the court's discretionary determination of a petitioner's suitability for relief to the arguments set forth by the parties. (See, generally, § 1170.126.) Nor is his assertion supported by *Sineneng-Smith*, which expressly noted "[t]he party presentation principle is supple, not ironclad" (*Sineneng-Smith*, *supra*, 140 S.Ct. at p. 1579), that "[t]here are no doubt circumstances in which a modest initiating role for a court is appropriate" (*ibid.*), and that "a court is not hidebound by the precise arguments of counsel." (*Id.* at p. 1581.)

In sum, for the reasons discussed above, we conclude the trial court did not violate the party presentation principle or Fisher's due process rights by directing the People to produce the evidence referenced in their filings and denying his 1170.126 petition based on the reasons stated in its written decision.

12

## B.    Second Suitability Hearing

Fisher contends the trial court violated his due process rights because it did not hold a second hearing on his suitability for resentencing after receiving supplemental briefing and additional evidence per its request. Again, and as discussed below, we do not agree with his argument.

First, Fisher's contention is unsupported by the authority on which he relies. In his opening brief, he cites *Kaulick*, *supra*, 215 Cal.App.4th 1279, to assert a second hearing was required because a petitioner's suitability hearing "must be held after all the evidence is submitted to the court."

In *Kaulick*, an inmate serving a sentence of 25 years to life filed a petition for resentencing under section 1170.126. (*Kaulick*, *supra*, 215 Cal.App.4th at pp. 1288-1289.) The petition was served on the Attorney General, but not on the District Attorney. (*Id.* at p. 1289.) Without holding a hearing or giving notice to the District Attorney, the trial court granted the inmate's petition and resentenced the inmate as though he had only one prior strike conviction. (*Id.* at pp. 1286, 1289-1290.) Subsequently, the District Attorney filed a petition for writ of mandate, arguing the trial court erred by granting the inmate's petition without giving the People notice or an opportunity to be heard. (*Id.* at p. 1291.)

The appellate court granted the District Attorney's petition for writ of mandate, holding the trial court erred by granting the inmate's 1170.126 petition "without insuring that the District Attorney had received notice and an opportunity to be heard on the issue of dangerousness." (*Kaulick*, *supra*, 215 Cal.App.4th at p. 1286.) It also held: (1) a petitioner seeking relief under section 1170.126 has a right to be personally present at the hearing on their suitability for resentencing, as well as the resentencing

13

hearing itself (*id.* at p. 1299); (2) the victim of the commitment offense has a right to notice of, and to be heard at, the hearings regarding the petitioner's dangerousness and resentencing (*id.* at p. 1300); (3) section 1170.126 proceedings should be conducted by the original sentencing judge, if available, but the petitioner may waive the right for his petition to be considered by a particular judge (*id.* at pp. 1300-1301); (4) the prosecution bears the burden of establishing a petitioner's dangerousness under subdivision (f) by a preponderance of the evidence (*id.* at pp. 1301-1305); and (5) the inmate's equal protection challenge was meritless (*id.* at pp. 1305-1306).

The appellate court in *Kaulick* did not consider whether, as a matter of law, courts must hold another hearing on a petitioner's suitability for resentencing under section 1170.126 after vacating the matter's submission to receive additional evidence and supplemental briefing relating to the issue. Nor was the issue addressed in the published cases cited in Fisher's reply brief. (See *People v. Jefferson* (2016) 1 Cal.App.5th 235, 240-241, 245 [holding that a petitioner seeking resentencing under section 1170.18 is not entitled to a jury trial on their suitability for relief, that the prosecution bears the burden of proving a petitioner's dangerousness under section 1170.18 by a preponderance of the evidence, and that the trial court did not abuse its discretion by denying the 1170.18 petition at issue]; *People v. Esparza* (2015) 242 Cal.App.4th 726, 736-745 [reversing the denial of a 1170.126 petition because the trial court misallocated the burden of proving petitioner's dangerousness and relied on facts not proven by the prosecution to deny relief; rejecting the petitioner's contentions regarding section 1170.126's definition of dangerousness, as well as his arguments concerning his right to a

14

jury trial and the applicable standard of proof in 1170.126 proceedings]; *People v. Valencia* (2017) 3 Cal.5th 347, 375 [holding "section 1170.18, subdivision (c)'s definition of 'unreasonable risk of danger to public safety' [is] applicable only to the resentencing proceedings that are authorized under Proposition 47"].) Consequently, these cases do not assist Fisher in demonstrating reversible error. (*People v. Alvarez* (2002) 27 Cal.4th 1161, 1176 ["it is axiomatic that cases are not authority for propositions not considered"].)

Section 1170.126 likewise does not support Fisher's contention of error. Specifically, section 1170.126, subdivision (g) does not—as he argues—establish "[t]he dangerousness inquiry is a cumulative test, requiring the [c]ourt to consider all evidence on several interconnected factors before making a final decision." Instead, subdivision (g) identifies the factors the court may, but is not required, to consider in determining whether resentencing a petitioner may result in an unreasonable risk of danger to public safety. (§ 1170.126, subd. (g).)

Moreover, on the facts in this case, we discern no violation of Fisher's due process rights. "[A]lthough not subject to precise definition [citation], [procedural due process] requires notice and an opportunity to be heard. 'The fundamental requisite of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.'" (*People v. Zuniga* (1996) 46 Cal.App.4th 81, 84.)

The gravamen of Fisher's due process argument is that he was not afforded a meaningful opportunity to be heard on the comments he made at his parole hearing regarding his gang affiliation. Specifically, he complains that he was not given the chance to present witness testimony clarifying his relationship

15

with the Black P Stone Bloods. In so doing, however, Fisher overlooks that the trial court actually expressed willingness to hold a hearing on the supplemental evidence it requested regarding his gang activity. Specifically, after informing the parties that it had observed a gap in the record, directing the People to produce two specific documents, and inviting supplemental briefing on the weight and relevance of the People's assertions relating to those documents, the court stated: "The matter will be deemed submitted following the filing of the further briefing, *unless one of the parties requests a further hearing.*" (Italics added.)

In response to the order above, however, Fisher did not request a hearing. Instead, he filed a supplemental reply brief, in which he asserted the trial court violated the party presentation principle by directing the People to produce additional documents, minimized the relevance of the denial of his parole in 2019, and asked the trial court to focus on other evidence in the record which, in his view, showed he was not an active member of the Black P Stone Bloods and would not pose an unreasonable risk to public safety if resentenced. While he also submitted additional documentary evidence in support of his supplemental reply, he did not at any point in the underlying proceedings express a desire to present live testimony—either his own or that of other witnesses—to rebut the evidence produced by the People regarding his gang involvement. Nor did Fisher ask the trial court to hold a hearing after the matter had been taken under submission following the trial court's receipt of the People's additional evidence and the parties' supplemental briefs. And, as discussed above, the trial court's written decision denying Fisher's petition demonstrates the court considered all of the

16

evidence before it relating to the factors set forth in section 1170.126, subdivision (g), including the evidence submitted in support of Fisher's supplemental reply brief.

Based on the facts discussed above, we conclude Fisher was afforded "'the opportunity to be heard at a meaningful time and in a meaningful manner.'" (*People v. Zuniga, supra*, 46 Cal.App.4th at p. 84.) We therefore conclude the trial court did not violate Fisher's right to due process by denying his petition without holding a second hearing on his suitability for resentencing under section 1170.126, subdivisions (f) and (g).

### C.     The abstract of judgment must be corrected.

As noted above, Fisher was convicted of the commitment offense by a jury after trial. The abstract of judgment, however, states he was convicted by plea. "An abstract of judgment is not the judgment of conviction; it does not control if different from the trial court's oral judgment and may not add to or modify the judgment it purports to digest or summarize." (*People v. Mitchell* (2001) 26 Cal.4th 181, 185.) Accordingly, "[c]ourts may correct clerical errors at any time, and appellate courts . . . that have properly assumed jurisdiction of cases" (*ibid.*), may order correction of clerical errors in an abstract of judgment (see *id.* at pp. 185-188). We therefore direct the trial court to correct the error in the abstract of judgment identified above, and to forward a copy of the corrected abstract to the Department of Corrections and Rehabilitation.[6]

---

6      We acknowledge that, in his reply brief, "Fisher objects [to the Attorney General's] characterization of the error [above] as 'administrative' and wishes to preserve the issue for potential future litigation." His objection, however, is unsupported by reasoned argument or citation to authority. Thus, we need not

17

## DISPOSITION

The order denying Fisher's petition for relief under section 1170.126 is affirmed. The matter is remanded to the trial court with directions to prepare an amended abstract of judgment reflecting Fisher was convicted of the commitment offense by a jury after trial, rather than by plea, and to forward a certified copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

CURREY, P. J.

We concur:

MORI, J.

ZUKIN, J.

---

address it on the merits. (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852.) In any event, based on our review of the record, we agree with the Attorney General that the error is clerical and therefore subject to correction under *People v. Mitchell, supra*, 26 Cal.4th at p. 185.